**TICOR TITLE INSURANCE COMPANY OF CALIFORNIA, Appellant–Plaintiff,**

v.

**Eileen M. GRAHAM, Appellee–Defendant.**

**No. 02A04–9011–CV–561.**

Court of Appeals of Indiana, Fourth District.

Aug. 27, 1991.

Edward J. Liptak, Miller, Carson & Boxberger, Fort Wayne, for appellant-plaintiff.

Daniel E. Serban, Shambaugh, Kast, Beck & Williams, Fort Wayne, for appellee-defendant.

CONOVER, Judge.

Plaintiff–Appellant Ticor Title Insurance Company of California (Ticor) appeals the trial court's order granting an involuntary dismissal as requested by Defendant–Appellee Eileen Graham (Graham).

We reverse.

Ticor presents four issues for our review:

    1.  whether the evidence established a breach of the real estate seller's warranty as a matter of law;

    2.  whether the real estate seller was unjustly enriched;

3. whether the evidence failed to establish an estoppel as a matter of law; and

4. whether the doctrine of estoppel was inapplicable as a defense to the claims for breach of warranty and unjust enrichment made against the seller Graham.

On April 8, 1986, Graham purchased real estate located at 7934 Imperial Drive, Fort Wayne, Indiana (the property) at a sheriff's sale. The sheriff's deed showed the title to the property was subject to liens in favor of Metropolitan Life Insurance Company and Weyerhaeuser Company, among others.

Graham ordered title insurance for the real estate in June, 1986, from Dreibelbiss Title Company in order to determine the identity of the mortgage holders. The title insurance commitment indicated the mortgages were held by Metropolitan Life Insurance Company and Weyerhaeuser Company, as shown on the sheriff's deed.

The Metropolitan mortgage was originally given by Robert Hauser to Colonial Mortgage Company, securing the principal sum of $18,650, recorded June 11, 1968, at Mortgage Record 915, pages 268–270, then assigned to Metropolitan by an instrument recorded August 1, 1968, in Mortgage and Assignment Record 919, page 338.

The Weyerhaeuser mortgage was originally given by Robert H. Hauser to Colonial Mortgage Company securing the principal sum of $3,750 recorded June 11, 1968, in Mortgage Record 915, pages 271–273, then assigned to Weyerhaeuser by an instrument recorded August 1, 1968, in Mortgage and Assignment Record 919, page 339.

The Dreibelbiss title commitment did not inform Graham who was collecting the mortgage payments owed on the property. In cleaning the premises, she found a notice which led her to determine that Midland Mortgage Company in Kansas City held the mortgages. In July and August, 1986, Graham corresponded with Midland Mortgage concerning the amount of the payment owed on loan no. 1703398, for the outstanding mortgages against the real estate. Thereafter, Graham received a payoff statement for one of the mortgages dated November 3, 1986, showing a payoff of $2,445.19 on the smaller of the two mortgages.

In February, 1987, Graham began making monthly payments to MetFirst Financial as directed by Midland. The October to December, 1986, payments showed a loan number of 1703398. The January, 1987, payments showed a loan number of 2492940.

During the period that Graham was making these mortgage payments, she listed the real estate for sale on two occasions. Both profile sheets for the real estate showed an outstanding $12,100 mortgage to Midland Mortgage.

On June 3, 1987, Graham entered into an agreement with Harry J. Muta and Abbe S. Johnson for the purchase of the real estate for $68,400. Prior to entering into the agreement, Graham called MetFirst Financial. Graham gave the loan number on the payment booklet, her name, the name of the prior owners, and the address of the property.[1] However, MetFirst could find no record of a mortgage. Graham reduced her listing price from $69,900 to the sales price of $68,400.

Graham engaged a different title company (Three Rivers) to prepare a commitment for title insurance necessary for the sale to the Johnsons. In July, 1987, the title insurance was issued by Ticor naming the buyers Harry Muta and Abbe Johnson as insureds. The schedules to the title insurance commitment showed no outstanding mortgages.

As of the closing date, the unpaid principal balance and accrued interest on the mortgages totaled $13,757.38.

On the day of the real estate closing, the closing agent told Graham's realtor a payoff figure for the outstanding mortgage was needed. The agent called Graham and

---

1. Graham gave the original loan no. 170398. However, the new loan number was no. 24294–

0. This mix-up was discovered at Graham's deposition in April, 1989.

they estimated a figure of $13,000, which was given to the closing agent. At the closing, which was handled by Three Rivers, a check had been issued to Midland Mortgage in the sum of $13,000, but there were no payoff documents concerning the mortgage. Graham refused to pay that amount to Midland Mortgage and demanded that the closing agent re-issue the check to Graham. The closing agent then revised the settlement statement to show payment of $13,000 to Graham. Graham said she would take care of paying the mortgage herself. She then executed the warranty deed, closing affidavit and representations, and affidavit of seller.

In September and October, 1987, Graham received form letters from MetFirst Financial concerning delinquency in payments. In 1988, she received a statement from MetFirst Financial showing Ticor had paid off the mortgage loan no. 249294–0 by paying $13,681.29.

In September, 1988, Ticor filed a complaint alleging it had paid off two mortgages on the real estate sold by Graham to the buyers. Ticor brought the action as subrogee and assignee of the buyers under the title policy Three Rivers had written. A trial was held in August, 1990. At the end of Ticor's case, the trial court granted Graham's motion for involuntary dismissal under Ind.Trial Rule 41(B) and entered judgment for the defendant.

The trial court stated its basis for the ruling was Ticor failed to prove the existence of valid unpaid mortgage at the time of the real estate closing and Ticor was estopped from asserting its claims due to the representation of Three Rivers, whom the trial court found to be Ticor's agent. Ticor appeals.

These claims were dismissed pursuant to Ind.Trial Rule 41(B) which states in pertinent part:

(B) Involuntary Dismissal: Effect Thereof. After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence....

Here the trial judge dismissed these claims after Ticor had presented its evidence. We note Ticor had the burden of proof on each allegation and is, therefore, appealing from a negative judgment. For this court to reverse we must find that the judgment is contrary to law; that is, where the evidence is without conflict and leads to a conclusion opposite to that reached by the trial court. In addressing the question of whether a negative judgment is contrary to law, we consider only the evidence on the record most favorable to the prevailing party without reweighing the evidence or judging the credibility of witnesses. *In Re Marriage of Wooten* (1990), Ind.App., 563 N.E.2d 636, 639.

Ticor contends the trial court's entry of an involuntary dismissal against Ticor was contrary to law because the evidence it presented supported every element of Ticor's claims for breach of warranty and unjust enrichment against Graham. In order to prevail, Ticor was required to prove there were existing mortgages on the real estate at the closing date which were known to Graham.

The elements of Ticor's case for breach of warranty, the seller's warranty by Graham, the amount paid to extinguish the mortgages, and the existence of the mortgages on the real estate closing date, were clearly established. The record reveals the warranty deed executed by Graham complies with the form described in IND.CODE 32–1–2–12 guaranteeing the property to be free from all encumbrances. The grantee in a warranty deed may sue his or her immediate grantor for breach of covenant in the deed. Grantee has the right to remove an encumbrance and recover the amount thereof from the grantor. *E.g., McClure v. McClure* (1879), 65 Ind.

482, 486; *Rinehart v. Rinehart* (1883), 91 Ind. 89, 90.

Graham argues Ticor did not prove valid unpaid mortgages existed at time of closing. The record reveals documents and testimony establishing the existence of the mortgages in 1968 and continuing in existence until August, 1988. The Sheriff's Deed in 1986 was subject to liens in favor of Metropolitan Life Insurance Company and Weyerhaeuser Company. (R. 76). The Dreibelbiss Title Company commitment showed the recording of the Metropolitan and Weyerhaeuser mortgages on June 11, 1968, at Mortgage Record 915, pages 268–273. (R. 101). The mortgages were assigned to Ticor in July, 1988. Ticor released the mortgages in August, 1988. The assignment of mortgage and release of mortgage for each of the two mortgages referred to the same mortgage book and page numbers shown on the Dreibelbiss title commitment. (R. 77–80). In 1988, Graham received a statement from Met-First Financial showing Ticor had paid off $13,681.29 on the mortgages. (R. 185).

[2,3] Graham also urges Ticor failed to prove its damages. In an action for breach of a real estate warranty, the buyer may recover the amount paid to remove an encumbrance. *Rinehart*, *supra*, at 90. Damages for a breach of contract are to be proven with reasonable certainty. *Indiana Bell Tel. Co. v. O'Bryan* (1980), Ind.App., 408 N.E.2d 178, 183.

On Ticor's other theory of liability, for the recovery of the excessive amount of money mistakenly paid to Graham, Ticor was entitled to restitution of the excess. *Best v. Best* (1984), Ind.App., 470 N.E.2d 84, 88.

■ Ticor offered by way of stipulation, without objection, a computation showing the outstanding mortgage principal and interest amounts as of the real estate closing. (R. 82). Once a stipulation is entered into between the parties, the facts so stipulated are conclusive upon both the parties and the tribunal. A party cannot properly challenge facts on appeal which it has stipulated to below. *E.g., Wittwer v. Wittwer* (1989), Ind.App., 545 N.E.2d 27, 29.

■ However, Graham asserts she was not stipulating to the amount due. She claims she was merely agreeing to the admission of Exhibit 10. Further, she argues the actual amount of damages would be the amount paid to satisfy the mortgages and suggests Ticor paid less than the balance since each of the assignments state the mortgages were assigned to Ticor "in consideration of Ten and 00/100 Dollars ($10.00) and other valuable consideration."

A careful reading of the record reveals Exhibit 10 was entered and received by way of stipulation without objection.[2] Even if Graham had not meant to stipulate to the amount due, we note the releases of mortgages state the indebtedness had been paid and satisfied in full. (R. 20, 22). Graham testified she received a statement from MetFirst that Ticor had paid off $13,681.29. This is the sum needed to satisfy the outstanding mortgage balances and accrued interest as listed on the assignments. Considering both theories of recovery, probative evidence of monetary damages was presented.

■ Ticor next contends it presented evidence to establish unjust enrichment as a matter of law. Under the theory of unjust enrichment, a person who pays another an excessive amount of money due to an erroneous belief induced by a mistake of fact that the amount paid was necessary to discharge a duty is entitled to restitution of

---

**2.** The record reads in pertinent part:

MR. LIPTAK: Your Honor, taking the figures from the Assignment of Mortgages that have been admitted, I believe, as 5 and 6, I have made a computation of the mortgage principal and interest that would have been owed on the closing date July 30, 1987, and would offer that as Exhibit 10. I hope by way of stipulation.

MR. SERBAN: Yes, Your Honor, this was provided to me beforehand and I have no objection.

MR. LIPTAK: There is a principal amount shown on the prior exhibits, the Assignment of Mortgages, as of July 1, 1987. Exhibit 10 shows the interest to July 30.

COURT: All right. We'll show 10 admitted then without objection.

(R. 82).

the excess. *Best, supra,* at 88, citing Restatement of Restitution § 20 (1973). Money paid under a unilateral mistake of fact may be recovered when it would not have been otherwise paid, even though the party making the payment may have been careless. *Monroe Financial Corp. v. DiSilvestro* (1988), Ind.App., 529 N.E.2d 379, 383, *reh. denied, trans. denied* (Broker, which acted as customer's agent to sell stock and which mistakenly sold shares in company not held or intended to be sold by customer and delivered proceeds to her in exchange for commission, was entitled to recover proceeds erroneously paid to customer).

■ Here, a mistake appears to have been made by Three Rivers in not being aware of the outstanding mortgages in order to obtain payoffs for unpaid mortgages at closing. As a result of that mistake, the closing agent erroneously disbursed extra sales proceeds from the buyers to Graham which should have been used for payment of the mortgages. Graham had been paying a monthly payment on the mortgages up to the date of closing. She had not received any payoff notice. At closing when no figures were available on the amount needed to satisfy the mortgages, Graham demanded the excess proceeds to paid to her, saying she would take care of the mortgage indebtedness. That money was erroneously paid to her. She failed to do as she said. This evidence demonstrates Graham was unjustly enriched by receiving money to which she was not entitled.

One of the grounds the trial court gave for its ruling was Ticor was estopped from asserting its claims due to the representations of Three Rivers, whom the trial court found to be Ticor's agent. Ticor contends the evidence failed to establish an estoppel as a matter of law.

■ An equitable estoppel consists of a false representation or concealment of material facts a) made with knowledge of the true facts; b) made with intention that it should be acted upon; c) to a party who is without knowledge or means of knowing of the true facts; and d) reliance by that party upon the representation to its prejudice. *Justice v. Mid–State* (1970), 146 Ind. App. 662, 257 N.E.2d 843, 845.

■ The title commitment was never entered into evidence. Therefore, Graham's claimed false representation element on which her estoppel defense is based was never before the trial court.

Moreover, Graham was not without personal knowledge of the true facts. She was making monthly mortgage payments up to the time of closing. She also had a coupon book to be used when future payments were to be made. Based upon a title commitment she obtained in June, 1986, she had estimated the mortgage balance to be approximately $12,100 in her listing contract for the sale of the real estate. When she left the closing with the extra sales proceeds in hand, she assured her realtor she would "take care of the mortgage." (R. 222–223).

Also, the element of detrimental reliance on the part of Graham has not been proved. She listed the real estate and sold it with the belief there was an outstanding mortgage on the property. She reduced the sales price of the home before she received the title commitment.

Ticor's claim was brought against Graham as the subrogee and assignee of the buyers. In order to raise an estoppel to Ticor's claim, Graham had to show the buyers made some false representation or concealed material facts. There is no such evidence in the record. Even if the court focuses on the representation made by Three Rivers Title Company, rather than the representations of the buyers, there was no evidence showing that a misrepresentation concerning the existence of mortgages on the real estate was made with knowledge of the true facts.[3]

Estoppel is grounded on equity and good conscience. An estoppel can never be as-

---

**3.** The trial court stated Three Rivers was Ticor's agent at the closing. Ticor would argue the settlement statements show Three Rivers was acting as the agent for both the buyers and the sellers at the closing, charging $75 to each of them. (R. 145–148). Thus, Ticor suggests, if Graham was misinformed, her own agent Three Rivers was responsible, not Ticor.

serted to uphold fraud. *Rushville Nat. of Rushville v. State Life Ins. Co.* (1936), 210 Ind. 492, 1 N.E.2d 445, 449. One maxim of equity states that "he who seeks equity must do equity." *Alber v. Standard Heating and Air Conditioning, Inc.* (1985), Ind.App., 476 N.E.2d 507, 510. Graham has not fulfilled all the elements necessary to claim estoppel as a defense especially given Graham's knowledge of the outstanding mortgages.

In its brief, Graham suggests Ticor cannot rely on the equitable theory of subrogation because of its negligence.

■■■■ The right of subrogation is equitable in nature whether or not it is referred to as such in a contract. *National Mutual Ins. Co. v. Fincher* (1981), Ind. App., 428 N.E.2d 1386, 1388. Subrogation depends upon the equities and attending facts and circumstances of each case. *Lawyers Title Ins. Co. v. Capp* (1978), 174 Ind.App. 633, 369 N.E.2d 672, 674. The remedy will not be allowed where the party is guilty of culpable negligence. However, the negligence of the subrogee must be more than ordinary negligence in order to bar application of the principal of subrogation, and relief may be allowed notwithstanding the suitor's mistakes and ignorance. The negligence of a person seeking subrogation is chiefly of significance where there are subsequently intervening rights involved which would be prejudiced if subrogation were allowed. 83 C.J.S. *Subrogation* § 6, p. 596.

■■■ Despite any mistake on Three River's part, we reject Graham's suggestion Ticor should not have been allowed to proceed as subrogee of the buyers. We further note Ticor was also assignee of the mortgages. An assignment is a transfer which confers a complete and present right in a subject matter to the assignee. *Brown v. Ind. Nat. Bk.* (1985), Ind.App., 476 N.E.2d 888, 894, *reh. denied, trans. denied.*

We need not discuss the balance of Ticor's contentions regarding Graham's proposed equitable estoppel defense. It may make those arguments to the trial court if raised during the retrial of this matter.

Ticor made out a prima facie case for breach of warranty and unjust enrichment against Graham in its case in chief. Thus the trial court erred in granting Graham's motion for involuntary dismissal.

Reversed and remanded for a new trial.

CHEZEM and STATON, JJ., concur.