ASSOCIATED MEDICAL NETWORKS, LTD., Associated Insurance Companies, Inc., and Anthem Health Systems, Inc., Appellants (Defendants below),

v.

Dr. William R. LEWIS, Dr. Darryl Fortson and Wabash Avenue Medical Center, and all others similarly situated, Appellees (Plaintiffs below).

No. 49S05–0310–CV–435.

Supreme Court of Indiana.

March 31, 2005.

David R. Frick, Anthem Insurance Co., Inc., Thomas G. Stayton, John Joseph Tanner, Daniel R. Roy, Baker & Daniels, Indianapolis, IN, Attorneys for Appellants.

Irwin B. Levin, David J. Cutshaw, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellees.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS, NO. 49A05–0203–CV–122.

DICKSON, Justice.

This appeal challenges the trial court's determination that the predominance and superiority requirements of Indiana Trial Rule 23(B)(3) were satisfied for purposes of maintaining a class action. Concluding that predominance was not established, we reverse the class certification.

The plaintiffs, Dr. William R. Lewis, Dr. Darryl Fortson, and Wabash Avenue Medical Center (collectively, "the Providers"), brought this action to compel the defendants, Associated Medical Networks, Ltd., Associated Insurance Companies, Inc., and Anthem Health Systems, Inc. (collectively, "Anthem"), for payment of medical expenses under assignments executed by patients, and for certification as a class to proceed on behalf of all other similarly situated health care providers.

The class certification was preceded by rather extensive litigation in both the state and federal courts, as more fully described in the opinion of the Court of Appeals. This interlocutory appeal is based on the trial court's Order Certifying Plaintiff Class, which made the following findings with respect to T.R. 23(B)(3), the focus of this appeal:

The elements of Rule 23(B)(3) are satisfied in the present matter because common questions predominate over individual ones and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Court notes that individual class members do not appear to wish to control the prosecution of separate actions, that no other litigation concerning this controversy has been commenced, that it is desirable to concentrate this litigation in a single forum, and that no difficulties are likely to be encountered in the management of this action as a class action. Defendants' common course of conduct in paying patients of non-Network health care providers directly is a predominant factual and legal issue.

Appellants' Appendix at 15. The court then defined and certified the following plaintiff class:

Any and all health care providers in the State of Indiana, who have ever had restrictions placed on their license to practice medicine by the Health Professions Bureau, including their professional associations, corporations, partnerships, associates, and partners, or who, for any reason, were not preferred health care providers or network providers, and to which Defendants and their predecessors failed to forward checks

for medical services rendered to patients insured by Defendants or their predecessors (under health insurance contracts which are not governed by ERISA or which are specifically exempted from ERISA pursuant to 29 U.S.C. sec. 1003 [1]) directly to the health care provider, or otherwise include said health care provider as a payee on said checks, and who were damaged thereby. *Id.* at 15–16 (footnote added). Anthem sought and received permission from the trial court and the Court of Appeals to bring this interlocutory appeal of the class certification order. The Court of Appeals affirmed the class certification. *Assoc. Med. Networks Ltd. v. Lewis,* 785 N.E.2d 230 (Ind.Ct.App.2003). We granted transfer. 804 N.E.2d 752 (Ind.2003).

As its sole contention in this interlocutory appeal, Anthem asserts that the trial court erroneously found that the Providers satisfied the "predominance" and "superiority" requirements of T.R. 23(B)(3). The relevant language of T.R. 23(B) provides:

(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

(1) * * *

(2) * * *; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

For purposes of this opinion, the language of subsection (B)(3) stating the requirement that certain questions "predominate over any questions affecting only individual members" is referred to as the "predominance requirement." And the language requiring that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" is referred to as the "superiority requirement."

The determination of whether an action is maintainable as a class action is "committed to the sound discretion of the trial court." *Northern Ind. Public Service Co. v. Bolka,* 693 N.E.2d 613, 615 (Ind.Ct. App.1998), *trans. denied.* Appellate courts reviewing a class certification employ an abuse of discretion standard. *Id.* The trial court's certification determination will be affirmed if supported by substantial evidence. *Id.* A misinterpretation of law, however, will not justify affirmance under the abuse of discretion standard. *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993).

### Predominance

As to the predominance requirement, Anthem principally contends that

---

**1.** This carve-out is the result of the case being first removed to federal court by Anthem, then remanded back to state court after the Providers filed an amended complaint to eliminate any claims pertaining to patients with health insurance plans governed by ERISA.

the requirement is met only if the main issues in the case can be resolved on a class-wide basis with generalized evidence. Anthem does not dispute that it commonly pays health insurance claims directly to patients of physicians that are not a member of one of Anthem's networks of preferred health care providers. Appellants' Br. at 21. But it argues that finding a common course of conduct alone does not satisfy the predominance requirement, and that any such finding must have "value" in adjudicating the individual claims of class members. Anthem asserts that the generalized evidence here fails to prove *any* of six essential elements[2] of the Providers' breach of contract claim based on assigned insurance benefits, and thus each class member will have to separately prove each element of the member's claim at trial. Because the questions common to the class will not predominate over the individual issues at trial, Anthem urges that the predominance requirement is not satisfied.

In response, the Providers primarily contend that, under Indiana case law, merely showing a common course of conduct will establish predominance. Asserting that Anthem admits "it engaged in a common course of conduct: it does not pay non-participating health care providers who have obtained assignment of benefits from their patients, but instead, pays their patients directly in derogation of the assignments," Appellees' Br. at 13, the Providers urge that the trial court was correct to thus find that a "common course of conduct permeated each member's claim and predominated." *Id.* at 13–14. The Providers argue that the existence of a common course of conduct is sufficient to establish predominance without needing to prove all or a major portion of the elements of each class member's claim. The Providers do not dispute the existence of any of the six specific issues of fact urged by Anthem, but assert that these do not defeat predominance and may be handled in a claims process after the legal issues are resolved.

The Providers additionally emphasize that predominance can be satisfied by either "questions of law or fact common to the members of the class," T.R. 23(B)(3), and assert that predominance is satisfied by two common legal issues that permeate all the class members' claim: (a) "whether a physician can sue a health insurer directly when the insurer pays a patient over an assignment of benefits," and (b) "whether a non-assignment clause in Anthem's identical health insurance policies can legally prevent direct recovery by the health care provider against the health insurance company." Appellee's Br. at 14.

Anthem replies that the trial court, in its class certification order, does not find predominance from, or even mention, either of the two legal issues urged by the Providers. As to "whether a physician can sue a health insurer directly," Anthem argues that this is not an issue in the case because the Providers' complaint asserts "nothing more than a breach of contract claim." Appellants' Reply Br. at 14–15. Anthem points out that when it filed its motion for

---

**2.** Anthem contends that each class member's contractual cause of action consists of five elements, in addition to which a defense must be considered as to each class member's claim. The alleged five elements are: (1) the particular assignment was valid under Indiana law; (2) the particular patients making the assignments had non-ERISA health plans; (3) the assignment was in effect during a relevant time period; (4) the provider gave notice to Anthem that they had obtained the assignment; (5) the provider was not paid by the patient or Anthem. The sixth alleged element of proof is Anthem's defense that most of its health insurance plans prohibit the patient from assigning his or her right to the proceeds.

summary judgment, it did not challenge the legal viability of the Providers' assignment of benefits theory. Anthem further contends that the Providers' second alleged issue, regarding an alleged non-assignment provision in its contracts, is not a *common* issue because "only some of Anthem's health plans contain non-assignment provisions" and that this question is therefore an individual rather than a common issue. *Id.* at 15. Anthem emphasizes that "[a]lthough Anthem does not dispute the [Providers'] legal theory, each class member still has to prove every element of that cause of action with his or her own evidence." *Id.*

We believe that the parties' arguments essentially present two questions as to the issue of predominance under T.R. 23(B)(3):

(1) Can the existence of facts showing a common course of conduct, but which do not resolve any of the elements for the relief sought in the underlying claim, be sufficient to establish predominance?

(2) Are there issues of law common to the members of the class that predominate over questions affecting only individual members?

Significantly, the trial court's determination that predominance was satisfied was based upon Anthem's "common course of conduct in paying patients of non-Network health care providers directly," which the trial court found to be both a "factual and legal issue." Appellants' Appendix at 15.

While not an issue in this case, the Indiana class action rule requires the satisfaction of other prerequisites to maintain a class action. One of these is that there must be "questions of law or fact common to the class." Ind. T.R. 23(A)(2). This requirement of "commonality" is then augmented by the "predominance" requirement of T.R. 23(B)(3), which requires not only the existence of "questions of law or fact common to the members of the class,"

but also that questions must "predominate over any questions affecting only individual members." Thus, the language of the rule itself requires more than the mere existence of questions of law or fact common to the class.

Understanding the meaning and application of this predominance requirement has been the subject of several Indiana cases. One of the earlier ones, *Arnold v. Dirrim,* 398 N.E.2d 426, 436 (1979), *trans. not sought,* described the requirement as depending "on whether the claims of the class members derive from a common nucleus of operative facts." But then, after identifying the "essence of the class members' claims," it found that the common nucleus of common facts "would be largely the same for all class members." *Id.* This phrase "common nucleus of operative facts" has been employed in subsequent decisions. In *Skalbania v. Simmons,* 443 N.E.2d 352, 358 (Ind.Ct.App.1982), *trans. denied,* the court analyzed each of several counts of the plaintiffs' complaint for damages to determine whether for that count there existed a nucleus of facts common to the class that was also the "focus of inquiry." In *ConAgra, Inc. v. Farrington,* 635 N.E.2d 1137, 1143 (Ind.Ct.App.1994), *trans. not sought,* which involved a suit alleging breach of contract, unjust enrichment, fraud, negligence, and other counts, the common nucleus was that the "facts surrounding the misconduct would be largely the same for all class members" and that "injury and damages were common to the class." Similar fraud theories were asserted in *Edward D. Jones & Co. v. Cole,* 643 N.E.2d 402, 405 (Ind.Ct.App. 1994), *trans. denied,* where the court found predominance because the common nucleus involved the "existence and implementation of a common scheme by Jones to defraud its clients." In *Connerwood Healthcare, Inc. v. Estate of Herron,* 683

N.E.2d 1322, 1329 .(Ind.Ct.App.1997), *trans. denied,* a class action seeking ·damages for personal injuries and wrongful death of residents of a nursing facility, predominance was found because the "common operative facts" involved allegations of food poisoning following a common meal of scrambled eggs.. And the common nucleus of operative facts found to satisfy predominance in *Bolka,* 693 N.E.2d at 620, was that damage to the plaintiffs' boats was caused by emissions from the defendant's power plant.

■ We agree with the Court of Appeals in *Wal–Mart Stores, Inc. v. Bailey,* 808 N.E.2d 1198, 1206 (Ind.Ct.App.2004), *trans. pending:*

> The common theme throughout *Bolka,* · *Connerwood Healthcare,* and *Skalbania* is that the existence of a common course of conduct by the defendant/defendants established that common issues predominated over individual issues and thus warranted certification. In each case, it is evident from this court's analysis and holding that the common course of conduct could establish a main issue with respect to the case, such as the negligence of the party.... [W]hile a common nucleus of operative facts *may* satisfy the predominance requirement, such is not necessarily so.

The court indicated its agreement with the assertion that "just because the claims may arise from 'a common nucleus of operative facts' does not mean that the common claims necessarily predominate." *Id.* at 1204.

■ These cases correctly require that there must be more than a mere nucleus of facts in common with the plaintiff class. Predominance requires more than commonality. Predominance cannot be established merely by facts showing a common course of conduct, but the common facts must also actually "predominate over any questions affecting only individual members." T.R. 23(B)(3).

■ Indiana's Trial Rule 23 is based upon Rule 23 of the Federal Rules of Civil Procedure, and it is thus appropriate to consider federal court interpretations when applying the Indiana rule. *Hefty v. All Other Members of Certified Settlement Class,* 680 N.E.2d 843, 848 (Ind.1997); *Connerwood Healthcare,* 683 N.E.2d at 1325–26; *Skalbania,* 443 N.E.2d at 357. The text of 23(B)(3) is identical in both rules. The Federal Advisory Committee Notes, which supported· the adoption of Rule 23, in discussing the predominance requirement, states, "It is only where this predominance exists that economies can be achieved by means of the class-action device." *Published in* William F. Harvey, 2 Indiana Practice, Rules of Procedure annotated 464. It is generally accepted that the analogous federal Rule 23(b)(3) "is designed to be a means of achieving economies of time, effort, and expense." James Wm. Moore, 5 Moore's Federal Practice § 23.44[1], at· 23–207, and cases cited therein at footnote 4. Other noted commentators explain:

> .Thus the predominance test really involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis.

Charles Alan Wright, Arthur Miller, Mary Kay Kane, 7A Federal Practice and ·Procedure § 1777, at 518–19. Professor Moore's treatise provides a helpful look at the problems of determining predominance under the heading "No Bright Line ·Test Measures Predominance; Each Case Is Measured by Its Own Facts:"

In a Rule 23(b)(3) class action, common questions of law or fact must predominate over questions affecting only individual members. There is no precise test for determining whether common questions of law or fact predominate, however. Instead, the Rule requires a pragmatic assessment of the entire action and all the issues involved. In making that assessment, courts have enunciated a number of standards, finding ... predominance if:

- The substantive elements of class members' claims require the same proof for each class member;
- The proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests.
- The resolution of an issue common to the class would significantly advance the litigation.
- One or more common issues constitute significant parts of each class member's individual cases.
- The common questions are central to all of the members' claims.
- The same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.

Courts generally agree that the predominance of common issues does not mean that common issues merely outnumber individual issues. Nor should a court determine predominance by comparing the time that the common issues can be anticipated to consume in the litigation to the time that individual issues will require. Otherwise, only the most complex common issues could predominate, because only complex issues tend to require more time to litigate.

5 MOORE'S FEDERAL PRACTICE § 23.45[1], at 23–210 to 212 (footnotes omitted).

The Providers do not dispute the issues of proof claimed by Anthem to be necessary for the resolution of each claim for insurance benefits asserted by each individual class member. The common course of conduct alleged by the providers to satisfy the predominance requirement—that Anthem does not pay non-participating health care providers who have obtained assignment of benefits from their patients but instead directly pays their patients—is not only undisputed, but also is not relevant to any of the issues of proof in the causes of action asserted. Establishing this common question will not establish any of the substantive elements of any of the class members' claims, nor will it advance the litigation in any respect. We perceive no economy of time, effort, or expense will be achieved.

We thus conclude that Anthem's conduct in directly paying patients of non-Network health care providers does not constitute a question of fact that predominates over the questions affecting only individual class members, as required by T.R. 23(B)(3).

▇ As an alternative to this claimed common question of fact, however, the Providers assert that predominance under the rule is satisfied by the existence of questions of law common to members of the plaintiff class: (a) whether a physician can sue a health insurer based on a patient's assignment, and (b) whether Anthem's non-assignment clauses bar recovery in such claims. The first is not a disputed question, however. Anthem acknowledges its network policy of paying the claims from all non-network providers directly to their patients. In addition, Anthem does not challenge the legal viability of the Providers' assignment of benefits theory. Among the issues Anthem identifies as elements at trial, it asserts no general claim that a physician's suit cannot be based on an assignment from a patient.

To the extent that this first issue presents any question, its resolution will not substantially advance the class members' claims nor achieve any economy of time, effort, or expense. More importantly, this first claimed question of law was not identified by the trial court as an issue of law upon which it found predominance satisfied. The first claimed question does not satisfy predominance.

As to the legal question regarding Anthem's non-assignment clauses, Anthem contends in part that it is not a *common* issue because "only some of Anthem's health plans contain non-assignment provisions." Appellant's Reply Br. at 15. The trial court made no finding as to whether this is a question of law "common to the members of the class" as required by T.R. 23(B)(3). In fact, the non-assignment clause question was not the basis for the trial court's determination that predominance was satisfied. The only finding made by the trial court to support its conclusion of predominance was Anthem's "common course of conduct in paying patients of non-Network health care providers directly," which the trial court found to be both a "factual and legal issue." Appellants' Appendix at 15. The trial court did not find predominance based upon any question regarding the enforceability of Anthem's non-assignment clauses.

We conclude that the class certification in this case fails as a matter of law to comply with the dominance requirement of T.R. 23(B)(3), which is not satisfied by the trial court's finding of Anthem's common course of conduct in directly paying patients of non-Network providers.

### Superiority

A class certification based upon T.R. 23(B)(3) requires compliance with both the predominance and the superiority requirements. Because we conclude that the Providers failed to satisfy the predominance requirement, the class certification fails, and we need not separately address whether the superiority requirement was satisfied.

### Conclusion

The trial court's Order Certifying Plaintiff Class is reversed, and this cause is remanded for further proceedings.

SHEPARD, C.J., and SULLIVAN and RUCKER, JJ., concur.

BOEHM, J., not participating.