**CHICAGO TITLE INSURANCE CO., Appellant–Defendant,**

v.

**Juanita A. GRESH, individually and as a representative of a class of persons similarly situated, Appellee–Plaintiff.**

No. 45A03–0705–CV–219.

Court of Appeals of Indiana.

Feb. 28, 2008.

D. Lucetta Pope, Carl A. Greci, Baker & Daniels LLP, South Bend, IN, Attorneys for Appellant.

Patrick A. Schuster, David E. Braatz, Crown Point, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Chicago Title Insurance Company ("Chicago Title") challenges by interlocutory appeal a trial court order granting class certification. We reverse and remand.

### Issue

The dispositive issue is whether the trial court abused its discretion in finding that common issues would predominate over issues affecting individual class members.

## Facts and Procedural History

Chicago Title provides settlement and title insurance services for various real estate transactions. Its services include the recording of deeds, mortgages, mortgage releases, and related documents. For residential real estate transactions, Chicago Title agents prepare a HUD–1 Settlement Statement listing the various costs and fees incident to closing, including fees charged by government agencies to record the aforementioned documents.

County recorders and auditors publish fee schedules in accordance with state statute,[1] and the fees vary, depending on the size, type, and format of each document. Documents such as mortgages are prepared before closing and recorded after closing. Mortgage releases often are prepared after closing when the lender has received full satisfaction of the debt. Chicago Title's standard practice is to instruct lenders to return mortgage releases to them so that Chicago Title can record the releases; however, lenders sometimes record releases on their own.

On September 30, 2002, Chicago Title agent Tina Brakley conducted a residential mortgage refinance closing for Juanita A. Gresh and William Gresh. Brakley prepared and presented to the Greshes a HUD–1 Settlement Statement, which listed recording fees of $40 for the mortgage and $15 for each of the two mortgage releases. The Greshes paid the fees to Chicago Title as part of the settlement. When Chicago Title subsequently recorded the mortgage, the actual charge was $37. The lender banks recorded the releases instead of returning them to Chicago Title for recording. The record does not indicate whether either of the lender banks charged the Greshes for recording the releases. The record also does not indicate that the Greshes made any request to Chicago Title for a refund of the difference between the fees collected and those actually paid out.

On April 29, 2003, the Greshes filed a complaint against Chicago Title, alleging unjust enrichment, statutory conversion, and violations of the Deceptive Consumer Sales Act. William Gresh was removed as a party plaintiff on December 14, 2005, following his death.

On December 16, 2005, pursuant to Indiana Trial Rule 23, Juanita Gresh filed a motion for class certification asking to serve as representative of an "Unjust Enrichment Class," a "Conversion Class," and a "Deceptive Practice Class." The classes were defined as

1. All persons who were parties to a real estate sale, purchase, or transaction to refinance in Indiana for which the Defendant was the settlement/closing agent, which closed on or after April 29, 2001, [or, for the Unjust Enrichment Class, April 29, 1993]; and

2. From, or on behalf of whom, the Defendant received, collected, or withheld a fee or fees for recording a release, deed, mortgage, or other instrument in connection with their closing; and

3. For which the Defendant either did not record the instrument for which such fee was received, or for which the Defendant received and retained an amount greater than the amount of the governmental charges Defendant actually incurred to record the instrument.

Appellant's App. at 36–37.

On June 21, 2006, the trial court held a hearing on Gresh's motion. On January

---

1. Ind.Code § 36–2–7–10.

18, 2007, the trial court granted the motion and designated Gresh as class representative of the three certified classes.

On February 16, 2007, Chicago Title filed a motion to certify the class certification order for interlocutory appeal. Following a hearing, the trial court granted Chicago Title's motion to certify on May 1, 2007, finding that an appeal would present substantial questions of law regarding whether common issues predominate and whether the class action is a superior method of adjudicating the dispute, the early determination of which will promote a more orderly disposition of the case. *Id.* at 102. This Court accepted jurisdiction of the interlocutory appeal on June 18, 2007. Additional facts will be provided as necessary.

## Discussion and Decision

 "The determination of whether an action is maintainable as a class action is committed to the sound discretion of the trial court." *Associated Med. Networks, Ltd. v. Lewis,* 824 N.E.2d 679, 682 (Ind.2005) (citation and quotation marks omitted). When reviewing a class certification order, we apply an abuse of discretion standard. *Id.* The trial court's certification order will be affirmed if it is supported by substantial evidence. *Id.* However, misinterpretation of law will not justify affirmance under the abuse of discretion standard. *Id.*

Chicago Title contends that the trial court misinterpreted Indiana Trial Rule 23(B), which provides in pertinent part,

An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied,[2] and in addition:

. . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

(Emphasis added.)

Chicago Title specifically asserts that the trial court abused its discretion in determining that common issues predominate over issues pertaining to individual members of the proposed classes. In examining the predominance issue, this court recently stated:

There is no precise test for determining whether common questions of law or fact predominate; instead, Indiana Trial

---

2. Indiana Trial Rule 23(A) provides,
 One or more members of a class may sue or be sued as representative parties on behalf of all only if:
 (1) the class is so numerous that joinder of all members is impracticable;
 (2) there are questions of law or fact common to the class;

 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
 (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(B)(3) requires a pragmatic assessment of the entire action and all the issues involved. In making this decision, we consider whether the substantive elements of class members' claims require the same proof for each class member; whether the proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests; whether the resolution of an issue common to the class would significantly advance the litigation; whether one or more common issues constitute significant parts of each class member's individual cases; whether the common questions are central to all of the members' claims; and whether the same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.

*7–Eleven, Inc. v. Bowens,* 857 N.E.2d 382, 393–94 (Ind.Ct.App.2006) (citations omitted).

Because Indiana Trial Rule 23 is based on Rule 23 of the Federal Rules of Civil Procedure, it is appropriate to consider federal court interpretations when applying the Indiana rule. *Associated Med.,* 824 N.E.2d at 685.

"[T]he predominance test really involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis."

*Id.* (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1777, at 518–19). In cases involving the predominance issue, the existence of a common course of conduct by the defendant has been central in determining that certification is warranted. *Wal–Mart Stores, Inc. v. Bailey,* 808 N.E.2d 1198, 1206 (Ind.Ct.App.2004), *trans. denied.*

In *Doll v. Chicago Title Ins. Co.,* 246 F.R.D. 683 (D.Kan., 2007), a federal district court recently examined the issue of predominance precisely as it relates to the alleged Chicago Title practices at issue in the instant case. The court in *Doll* examined the propriety of class certification under Federal Rule of Civil Procedure 23. Among other issues, the court addressed the question of predominance of common versus individual issues pertaining to the HUD–1 form supplied to customers at closing. The theories of recovery in *Doll* were breach of contract, breach of fiduciary duty, and conversion. While these theories are not identical to the theories of recovery raised in the present case, we find the issues analogous and the court's reasoning persuasive. For example, the *Doll* court noted that the HUD–1 form did not purport to be a contract and that "the terms of the contract between the parties may, in a particular case, arise also from other documents executed or oral statements made by the parties in connection with the closing." *Id.* at 689. The court then concluded that the class members' contract claims were "dependent upon unique facts, and common questions d[id] not predominate, as required." *Id.*

Here, Gresh's unjust enrichment claim will require proof that Gresh and all other class members paid Chicago Title an "excessive amount of money due to an erroneous belief induced by a mistake of fact that the amount paid was necessary to discharge a duty." *Ticor Title Ins. Co. of Cal. v. Graham,* 576 N.E.2d 1332, 1336–37 (Ind.Ct.App.1991), *trans. denied.* Contrary to Gresh's argument, establishing the relevant inducements and duties will require more than a blanket or cursory comparison between the amounts Chicago Title collected, paid out, and kept in each

transaction. First, the fee schedules differ by county and, even within a given county, are dependent upon the size, type, and format of the instrument being recorded. Releases often are not even created until after the closing, so it is difficult to see how a closing agent could use any figure besides an estimate in those cases.

Also, over 100 different closing agents represented Chicago Title in the ten-year period at issue. As just one example, Blakley testified in her deposition that she had personally worked as the settlement/closing agent on forty to sixty cases per month during her preceding three years as a fulltime closer, for an approximate total of 1800 cases. Appellant's App. at 119. Based on these undisputed figures, it seems clear that the relevant documents involved would number in the hundreds of thousands, if not millions.

Moreover, two Chicago Title managers provided sworn statements declaring that their closing agents do not use scripts or canned presentations when conducting closings. *Id.* at 83, 85. Thus, each customer's case would be dependent upon establishing the relative expectations based on the particular communications between the agent and customer. *See Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 248 (Ind.1992) (holding that an oral contract existed between the title company and its customer whereby, in exchange for a fee, the title company has a duty to deal appropriately with closing documents.)

With regard to Gresh's conversion and deceptive practices claims, we also find *Doll* persuasive. In addressing the plaintiffs' breach of fiduciary duty claim, the *Doll* court opined,

> Chicago Title's liability to a particular class member for breach of fiduciary duty must involve a consideration of the particular facts and circumstances of that member's closing. Plaintiffs argue that facts unique to each closing are irrelevant to liability on this claim because the breach is alleged to have occurred after the closing, when Chicago Title paid the recording fees and then chose not to refund any excess fees. The Court agrees with Chicago Title, however, that the individual circumstances of each closing may be materially relevant on the issue of liability. For instance, a jury might find differently on this claim of breach of fiduciary duty depending on whether a particular class member was told or otherwise knew that the HUD–1 amount for recording fees was merely an estimate, or whether the class member expected any refund of *de minimis* overcharges, or whether the administrative cost would make a refund of one or two dollars impractical. Such factual issues defeat predominance and make class certification inappropriate.

246 F.R.D. 683, 690. Likewise here, where Gresh alleges conversion and deceptive consumer practices, proof of customer reliance and Chicago Title's intent to deprive and/or deceive will necessarily involve inquiry into each closing agent's representations to each class member and the expectations created thereby.[3] We conclude, as did the court in *Doll*, that such factual issues defeat predominance and therefore

---

**3.** We note that the purported class designations in *Doll* included plaintiffs from eighteen different states. The court addressed the issue of the varying laws in those states and found that this created manageability problems. Even though the present case involves plaintiffs only from Indiana, the depth of inquiry required to examine oral representations made by over one hundred different agents to thousands of different customers indicates that individual issues will predominate. *See Doll* at 694 n. 7 (specifically declining to offer any opinion or suggestion as to whether a class from a single state would be certified in light of the other deficiencies discussed in the opinion).

make class certification inappropriate. The trial court abused its discretion in granting Gresh's motion for class certification. We reverse and remand for further proceedings.[4]

Reversed and remanded.

BAILEY, J., and NAJAM, J., concur.

---

**4.** Because we conclude that common issues do not predominate over issues pertaining to individual members of the purported classes, we need not separately address whether Indiana Trial Rule 23(B)'s superiority requirement was satisfied.