**FILED**

Jul 13 2020, 8:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Kevin M. Forde
Kevin R. Malloy
Brian P. O'Meara
Forde & O'Meara LLP
Chicago, Illinois

Thomas F. Godfrey
Michigan City, Indiana

ATTORNEYS FOR APPELLEES

Kathleen A. DeLaney
Annavieve C. Conklin
DeLaney & DeLaney LLC
Indianapolis, Indiana

Shaw R. Friedman
Friedman & Associates P.C.
LaPorte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles J. Dempsey, on behalf of himself and all others similarly situated,

*Appellant-Plaintiff,*

v.

LaPorte County Auditor Joie Winski and LaPorte County Treasurer Nancy Hawkins,

*Appellees-Defendants.*

July 13, 2020

Court of Appeals Case No. 19A-PL-2683

Interlocutory Appeal from the LaPorte Superior Court

The Honorable Mary R. Harper, Special Judge

Trial Court Cause No. 46D02-1507-PL-1373

**Bailey, Judge.**

# Case Summary

In 2015, Charles J. Dempsey ("Dempsey") filed a complaint against the LaPorte County Auditor ("the Auditor") and LaPorte County Treasurer ("the Treasurer") (collectively, "the County") to obtain interest upon his overpayment of real property taxes. Dempsey sought to be the class representative of LaPorte County taxpayers who had, since 2006, been given a tax refund or credit against future taxes without an interest payment. Dempsey's motion for class certification was denied and, on December 20, 2019, this Court accepted jurisdiction of Dempsey's interlocutory appeal. He presents a single, consolidated issue for review: whether the trial court abused its discretion in denying class certification.[1] We affirm.

# Facts and Procedural History

The instant litigation has been pending for approximately five years and, to date, no evidentiary hearing has been conducted. The trial court conducted a hearing on Dempsey's second amended motion for class certification, at which argument of counsel was heard, and reference was made to some discovery

---

[1] Dempsey articulates a second issue for appeal, that is, whether the County can defeat a class action by destroying public records or failing to maintain records adequate to permit him to ascertain members of the proposed class. This purported issue was not developed in litigation in the trial court. The County, in response to Interrogatories propounded by Dempsey, referred to a policy of destroying records after seven years. The sole County employee deposed denied knowledge of the policy. The trial court did not conduct an evidentiary hearing, and Dempsey did not present any evidence of destruction of public records, nor did he offer testimony to explain or challenge the record-keeping procedures. Absent factual development, we do not address Dempsey's contention that the County was rewarded for a lack of diligence in record-keeping.

materials, including the deposition of Eleanor McFatridge ("McFatridge"), who was employed in the Auditor's office to process refunds. In these circumstances, where we presume that the case has merit for purposes of determining class certification, our recitation of the alleged facts is derived from the pleadings, attachments to the pleadings, and assertions of the parties' respective counsel.[2]

[3] On May 1, 2008, the LaPorte County Department of Government Finance ordered a county-wide reassessment of real property for taxation purposes, pursuant to Indiana Code Section 6-1.1-4-9 and Resolution 2008-01. During the reassessment, LaPorte County taxpayers were issued provisional bills, and if a taxpayer did not promptly pay the provisional bill, a penalty would be assessed. After the reassessment was completed, taxpayers received reconciliation bills. Some property tax assessment values were reduced, resulting in the affected taxpayers owing less tax than that which had been provisionally paid. In those cases, a taxpayer would typically receive a check, but if the taxpayer owed delinquent taxes, a credit would be applied to the delinquency.[3] Accrued penalties would be waived upon posting of the credit.

---

[2] "Class certification is essentially a procedural order and carries no implication about the merits of the case." *NIPSCO v. Bolka*, 693 N.E.2d 613, 617 (Ind. Ct. App. 1998), *trans. denied.* Designations may be made to prove the requirements for class certification rather than to prove the truth of the matter asserted. *See id.* At the outset of the hearing conducted on May 30, 2019, the trial court judge clarified that the matter was "fully briefed" and confirmed that she "went through every pleading" in a pre-hearing review. (Tr. Vol. II, pg. 27.)

[3] Also, a taxpayer could expressly request that a refund be applied to future taxes.

[4] Indiana Code Section 6-1.1-37-11 [repealed effective July 1, 2017] then provided that a taxpayer whose taxes were reduced because of a reassessment was due interest. Apparently, the countywide reassessment prompted a question of statutory application within the Auditor's office and clarification was sought with respect to provisional bills issued for 2006, payable in 2007. Discovery materials indicate that the Auditor received a responsive letter, dated August 2, 2011, jointly signed by Brian Bailey, Commissioner of the Department of Local Government Finance, and Bruce Hartman, State Examiner, State Board of Accounts. The letter provided in pertinent part that a taxpayer would be "entitled" to statutory interest of 4% for "a refund or credit but *not* because of an assessment appeal." (App. Vol. II, pg. 27.) (emphasis in original.)[4]

[5] Up until 2015, County employees purportedly hand calculated reconciliation bills and credits stemming from the reassessment, but they did not add interest. In the case of a credit due a delinquent taxpayer, the Auditor would post a credit or issue a check to the Treasurer but, according to McFatridge, "we can't pay ourselves interest because we have to account to the State for interest paid."[5] (App. Vol. III, pg. 101.) However, the internal offset typically did not

---

[4] Purportedly, on July 21, 2016, the Auditor received an email communication from Michael Duffy, General Counsel of the Department of Local Government Finance, stating that the August 2011 letter was not intended to waive any interest due a taxpayer.

[5] Notwithstanding any discovery materials, McFatridge testified in her deposition that she did not rely upon an external communication such as the Brian Bailey letter in performing her duties.

favor the County, because the statutory interest rate was 4% and the delinquency charge was 5% in the first 30 days and 10% thereafter. When the Auditor implemented a new computer system in 2015, the software representative informed the Auditor's employees that "they should be paying interest." (App. Vol. III, pg. 106.) The Auditor agreed, and the office "started paying" interest and issuing a W-9 "to account to the State for interest paid." *Id.* at 101, 106.

[6] On July 17, 2015, Dempsey filed his complaint titled "Class Action Complaint Based on Statutory Rights of Taxpayers" ("the Complaint"). (App. Vol. II, pg. 27.) According to Dempsey, he sought "to recover unpaid statutory interest on property tax appeal refunds and credits" that were obtained "as a result of successful assessment appeals." *Id.* He alleged that he had personally paid real estate taxes on a parcel of property located on Lake Shore Drive in Michigan City, in LaPorte County ("the Property"), the taxes on the Property were lowered due to a reduced assessment, and he had received a refund without interest. Over time, Dempsey filed an Amended Complaint, Second Amended Complaint, and Third Amended Complaint, eventually reciting that the Property had been sequentially owned by himself, a trust for his benefit, and a trust for the benefit of his ex-wife (the Stacy R. Dempsey Trust).[6] Regardless of

---

[6] Dempsey was deposed regarding his ownership of the Property. He and his then-wife purchased the Property in 1998 for $250,000.00. On August 29, 2009, the Property was transferred to the Stacy R. Dempsey Revocable Trust. On September 11, 2012, the Property was transferred to the Charles J. Dempsey Revocable Trust. On October 24, 2016, the Property was sold for approximately $950,000.00.

deed transfers, Dempsey claimed to have consistently paid the real estate taxes on the Property, something the County did not dispute.

[7] Over the next few years, the parties litigated several matters. The County moved to dismiss the Complaint for lack of a Tort Claims Notice; the motion to dismiss was denied on September 24, 2015, with the trial court finding that Dempsey had not alleged a tort. Dempsey filed an amended complaint in October of 2015, and the County unsuccessfully attempted to perfect an interlocutory appeal. Dempsey removed the matter to the United States District Court, Northern District of Indiana, to pursue a federal Constitutional claim. On September 27, 2016, the federal court found that the "class-of-one equal protection claim has no basis in law," dismissed Dempsey's Fourteenth Amendment claim, and remanded the case to state court. (App. Vol. II, pg. 101.) Dempsey sought to file a Second Amended Complaint; the trial court granted leave on April 3, 2017. The County obtained a change of venue from the judge and moved to dismiss the Second Amended Complaint. At a hearing conducted on August 28, 2017, the County argued that exclusive jurisdiction was in the Indiana Tax Court and Dempsey had failed to exhaust available administrative remedies. On February 12, 2018, the trial court denied the motion to dismiss, concluding that resolution did not involve interpretation of a tax law and the Complaint was not subject to dismissal for lack of compliance with an administrative review mechanism.

[8] The parties engaged in discovery, propounding and answering interrogatories, and conducting two depositions, one of Dempsey, and one of McFatridge. In

response to interrogatories, the County offered Dempsey an opportunity to conduct a records inspection upon request, apparently something that Dempsey did not pursue.

[9] On May 30, 2019, the parties appeared for a hearing on two motions. First, the trial court heard argument on Dempsey's motion for leave to file a third amended complaint. As amended, the Complaint alleged three counts related to the omission of interest: (1) statutory violation; (2) violation of common law; and (3) disparate treatment under Article 10, Section 1 of the Indiana Constitution.

[10] Dempsey also requested class certification under Indiana Trial Rule 23, which the County opposed. Dempsey sought to be the named representative of the following described class:

> All persons or taxpayers [entities] who own or owned real property in LaPorte County, Indiana, and whose property taxes were reduced since January 1, 2006, and were either paid a refund or were issued a credit against future taxes but were not paid interest on any such refund or credit.

(App. Vol. III, pg. 9.) The trial court heard brief argument from counsel. Referring to McFatridge's deposition testimony that refunds were a common occurrence, Dempsey estimated that numerous taxpayers would fall within the proposed class. None had been specifically identified as of the hearing date, but he proposed that the trial court order one of the parties to comb the Auditor's records that had been compiled prior to digitization.

[11]     The County observed that ownership of the Property "had moved around." (Tr. Vol. II, pg. 39.) The County argued that the proposed class was overbroad, class membership could be determined only through an onerous procedure of sorting and scrutinizing paper records, and "[Dempsey] doesn't even fall within his own class." *Id.* at 43. Counsel advised the trial court that the sole check "produced in discovery" was payable to the Stacy R. Dempsey Trust in the amount of $2,799.20, relative to tax year 2011. *Id.* at 38. According to the County, no County check had been issued to Dempsey, but there had been an adjustment made relative to the Property in the amount of $892.00.[7] Purportedly, because taxes were delinquent when the credit was processed, the Auditor had posted a credit to the Treasurer for the Property and waived a late penalty of $235.90. In other words, Dempsey had not received a "refund or credit against future taxes," as referenced in the class description. Rather, he had been given (or benefitted collaterally from) a credit against delinquent taxes. Notwithstanding the deed transfers and penalty waiver, Dempsey maintained that he was an appropriate class representative because he had actually overpaid taxes and failed to receive interest thereon.

---

[7] County personnel described the posting of a credit to an account for a particular parcel of property, as opposed to refunding a particular payor, regardless of whether the payor had satisfied his or her own tax obligation or that of another.

On October 16, 2019, the trial court issued its order denying class certification.[8] Dempsey sought permission to pursue an interlocutory appeal, and this Court accepted jurisdiction.

# Discussion and Decision

Indiana Trial Rule 23 governs class action suits, providing in relevant part:

> (A) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

---

[8] On the same day, the trial court granted Dempsey leave to file his Third Amended Complaint. In determining the matter of class certification, the trial court had considered the Second Amended Complaint. However, the Third Amended Complaint was amended to clarify ownership of the Property. The trial court made a notation that the granting of leave to file the Third Amended Complaint did not change its analysis relative to class certification.

(B) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of:

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

As such, the foregoing rule specifies that each of the prerequisites enumerated in section (A) must be satisfied and one of the grounds in section (B) must be shown.

Although Trial Rule 23 does not address it, in addition to the express requirements of that Rule:

there is an implicit "definiteness" requirement. A properly defined class is necessary at the outset because a judgment in a class action has a res judicata effect on absent class members. The class definition must be specific enough for the court to determine whether or not an individual is a class member.

*Wal-Mart Stores, Inc. v. Bailey*, 808 N.E.2d 1198, 1201 (Ind. Ct. App. 2004), *trans. denied*.

Dempsey elected to proceed under Rule 23(B)(3), arguing that common questions of law or fact predominate over individual ones and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The language of subsection (B)(3) stating the requirement that

certain questions "predominate over any questions affecting only individual members" has been referred to as the "predominance requirement," and the language requiring that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" has been referred to as the "superiority requirement." *Associated Medical Networks, Ltd. v. Lewis*, 824 N.E.2d 679, 682 (Ind. 2005). Dempsey argues that he met his burden to show both predominance and superiority; the County argues that Dempsey established neither.

[16] Trial Rule 23 does not require a potential class representative to show a likelihood of success on the merits in order to have his or her claim certified as a class action. *LHO Indianapolis One Lessee, LLC v. Bowman*, 40 N.E.3d 1264, 1268 (Ind. Ct. App. 2015). Rather, assuming the merits of an action, a trial court must determine whether the plaintiff has satisfied the requirements for class certification. *Id.* But failure to meet any one of the requirements results in the denial of class status. *Id.* Whether the prerequisites have been met is a factual determination to be made by the trial court. *Id.* The trial court has broad discretion in determining whether an action is maintainable as a class action, and thus we review its class certification for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law and fact. *Id.* We will affirm the trial court's decision if it is supported by substantial evidence. *Associated Medical Networks, Ltd.*, 824 N.E.2d at 682.

In the order denying Dempsey's second amended motion for class certification, the trial court observed that Dempsey had made no contact with another class member and could not make a representation to the court as to whether a class member wished to control a separate action. The court was persuaded that direct requests to the Auditor for interest payments were preferable to class action litigation. The court reviewed the factual background underlying the Complaint, together with the definition of the proposed class, but did not enter an express conclusion as to whether common questions of law and fact predominate over individual ones. Indeed, the concepts of commonality and predominance are difficult, if not impossible, to apply when Dempsey at best received one taxpayer credit on his own behalf and has identified no other individual in like circumstances.

"Predominance requires more than commonality. Predominance cannot be established merely by facts showing a common course of conduct, but the common facts must also actually 'predominate over any questions affecting only individual members.'" *Id.* at 684 (citing T.R. 23(B)(3)). There is not a precise test for determining whether common questions of law or fact predominate. *Id.* at 686. "Instead, the Rule requires a pragmatic assessment of the entire action and all the issues involved. In making that assessment, courts have enunciated a number of standards, finding ... predominance if:

> ● The substantive elements of class members' claims require the
> same proof for each class member;

● The proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests.

● The resolution of an issue common to the class would significantly advance the litigation.

● One or more common issues constitute significant parts of each class member's individual cases.

● The common questions are central to all of the members' claims.

● The same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.

*Id.*

[19] We assume that Dempsey paid a tax obligation for the Property (whether deeded in himself or another entity at that time), the underlying assessment was reduced, this caused an overpayment, and Dempsey (or a trust) received the benefit of a credit without a disbursement of interest on the overpayment. Apparently, the County had a policy of internal off-set when a taxpayer who had overpaid on a provisional bill became delinquent on other taxes. Dempsey did not dispute the contention that taxes for the Property were delinquent, but he claims that the internal offset did not satisfy the County's obligation. This alleged inadequacy of County action is the issue to be litigated to resolve the merits of Dempsey's claim against the County. But Dempsey's circumstances do not mirror those of the proposed class, a broad class of taxpayers who, post-

2006, for any reason, received a refund or credit against future taxes without interest.

[20] Despite the breadth of class description, Dempsey has not identified a person (other than arguably himself) falling within the proposed class. He implicitly argues that the Auditor's office responded to an external communication by denying interest in all cases where the refund was traceable to the reassessment. He then offers argument based upon statistical probability, that is, with 88,000 parcels of real estate in LaPorte County, someone would surely fall within his proposed class. This is a logical proposition, but it stops short of Dempsey meeting his burden of proof to show that common issues predominate.

[21] For the same reason–the purported class is devoid of additional members--Dempsey cannot show the superiority of a class action to resolve claims. Despite some reference to one taxpayer recouping interest upon a written request, it appears that there is not a readily identifiable and efficient administrative remedy for a taxpayer to request the calculation and payment of interest that arguably should have been paid before the 2015 automation. But the County did not have to come forward with a user-friendly form. Dempsey had to show that the proposed class action was the superior method of resolution. He insists that the broad class description can be modified, and he is willing to strenuously represent anyone who can be identified as an aggrieved person after examination of the relevant paper records. However, he did not accept the invitation to review records in discovery. At bottom, Dempsey has not identified any person he expects to vigorously represent. He suggests that

other taxpayers are ignorant of their rights and are not participating in other litigation. But he simply does not know what taxpayers, if any, have initiated individual litigation or are interested in doing so. With the core deficit of information, Dempsey could not by bald assertions meet his burden of showing that class action litigation was superior to other methods for the fair and efficient adjudication of the controversy.

# Conclusion

[22] Dempsey has not shown an abuse of the trial court's discretion in denying class certification.

[23] Affirmed.

Crone, J., and Altice, J., concur.