

FILED
Aug 11 2015, 8:06 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jill M. Felkins | Robert A. Garelick |
| Segal McCambridge Singer & Mahoney | Steven M. Crell |
| Chicago, Illinois | John B. Bishop |
| | Cohen Garelick & Glazier |
| | Indianapolis, Indiana |

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LHO Indianapolis One Lessee, LLC, | August 11, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1411-CT-811 |
| v. | Appeal from the Marion Superior Court. |
| Esther Bowman, Individually and on Behalf of Other Similarly Situated Individuals, | The Honorable Theodore Sosin, Judge. |
| *Appellee-Plaintiff* | Cause No. 49D02-1310-CT-39975 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, LHO Indianapolis One Lessee, LLC d/b/a Indianapolis Marriott Downtown (Marriott), appeals the trial court's certification of a class defined by Appellee-Plaintiff, Ester Bowman (Bowman).

We reverse and remand.

## ISSUES

Marriott raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court erred in entering judgment on the merits in favor of Bowman; and

(2) Whether the trial court abused its discretion in granting class certification pursuant to Indiana Trial Rule 23.

## FACTS AND PROCEDURAL HISTORY

Alpha Kappa Alpha Sorority, Inc. (AKA) is a District of Columbia not-for-profit corporation consisting of various undergraduate and graduate chapters throughout the United States, whose principal business is managing all the regional chapters of AKA. The Central Region of AKA is comprised of the undergraduate and graduate chapters within Illinois, Indiana, Kentucky, Wisconsin, Minnesota, North Dakota, South Dakota, and the southeastern portion of Missouri. Each year, the AKA holds an annual conference for all

chapter members within a specific region. In April 2013, the 79th Annual AKA Central Regional Conference was held in Indiana at the Marriott in downtown Indianapolis. Approximately 1,900 members of the Central Region attended the conference.

[5] On Saturday, April 7, 2013, the Marriott catered a Luncheon which was attended by approximately 800 sorority members. The Luncheon included a choice of breaded, pan-seared chicken served with angel hair pasta and a mandarin orange cream sauce or a vegetarian option. During the meal, about 12 chicken dishes were returned to the kitchen after guests complained that the chicken appeared to be "pink." (Appellant's App. p. 181). At the conclusion of the Luncheon, the 75 leftover chicken meals were consumed by Marriott staff. Due to the number of complaints, Marriott's Executive Chef performed a visual inspection of the chicken and concluded that the chicken "was slightly pink from the marinade and the orange sauce." (Appellant's App. p. 182). That same evening, the Central Region organized a Gala event at the Marriott, at which a chicken meal was also served.

[6] Bowman, an attendee at the conference, opted for and consumed the chicken meal at the Luncheon. She attended the Gala later that evening. During the early morning hours of Sunday, April 8, 2013, Bowman became violently ill, experiencing bouts of severe diarrhea and vomiting for which she was ultimately hospitalized. No samples were collected of the diarrhea or vomit to test for the presence of food-borne pathogens, bacteria, or other contaminants. Sorority Liaison, Gisele Casanova, compiled a list of 59 attendees who became

sick that weekend and their corresponding symptoms. This list includes the member's name, chapter, symptoms, and address, as well as the place where the attendee consumed food. The list omits the type of food eaten or the time of the onset of symptoms. Moreover, the symptoms identified range from diarrhea and vomiting to "cold like illness" and the generalized "sick." (Appellant's Conf. App. pp. 203-04). Of all those attendees, there is no single, consistent place of dining: some members ate at a separate undergraduate luncheon, some ate at local restaurants, some ate at the Gala, and some ate at multiple places. Of the 59 people reporting illness, only 24 ate at the Luncheon. Predominately, most members who ate at the Luncheon and Gala and reported food poisoning like symptoms reside in Indiana.

[7] On October 31, 2013, Bowman filed a Class Action Complaint alleging that she and "61 others suffered personal injury and sustained economic loss as a result of consuming tainted food at the Downtown Marriott." (Appellant's App. p. 18). On January 9, 2014, she filed her motion to certify the class. On January 27, 2014, Marriott filed its objection to class certification. Bowman subsequently amended her motion. Following the necessary discovery, the trial court conducted an evidentiary class certification hearing on October 7, 2014. Thereafter, on October 28, 2014, the trial court concluded that Bowman satisfied the requirements of Indiana Trial Rule 23(A) and 23(B)(3) and entered its findings of fact and conclusions of law and judgment, granting Bowman class certification.

[8] Marriott now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Judgment on the Merits*

Prior to turning to the class action certification, Marriott presents this court with a procedural question. Specifically, Marriott contends that the trial court erroneously rendered a final adjudication on the merits in favor of Bowman. In its judgment, the trial court

> ORDERED, ADJUDGED AND DECREED [] that judgment is rendered in favor of [Bowman], individually and on behalf of other similarly situated individuals and [Bowman's] Amended Motion to Certify Class Action should be and is hereby GRANTED and [Marriott's] Objection to [Bowman's] Motion to Certify Class Action should be and is hereby DENIED.

(Appellant's App. p. 16). Focusing on the trial court's entry and the trial court's use of "and," Marriott identifies the existence of three separate rulings: "1) judgment is rendered in favor of Bowman <u>and</u> 2) Bowman's motion to certify the class is granted <u>and</u> 3) Marriott's objection is denied." (Appellant's Br. pp. 4-5).

"Class certification is essentially a procedural order and carries no implication about the merits of the case." *NIPSCO v. Bolka*, 693 N.E.2d 613, 617 (Ind. Ct. App. 1998), *trans. denied.* Thus, "in making a determination regarding class certification, a trial court may not conduct a preliminary inquiry into the merits of the suit." *Rene ex rel. Rene v. Reed*, 726 N.E.2d 808, 816 (Ind. Ct. App. 2000). As a "certification hearing is not intended to be a trial on the merits," "Trial Rule 23 does not require a potential class representative to show a likelihood of

success on the merits in order to have his claim certified as a class action." *Bolka*, 693 N.E.2d at 617. Instead, assuming the merits of an action, a trial court must determine whether the plaintiff has satisfied the requirements for class certification under Trial Rule 23. *Eggleston v. Chicago Journeymen Plumbers*, 657 F.2d 890, 895 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982).

[11] Although the trial court issued a "judgment," considering the trial court's entry in totality, we cannot agree with Marriott that this pronouncement necessarily correlates with a ruling on the merits of the cause. Statutorily, "[j]udgment" means "all final orders, decrees, and determinations in an action and all orders upon which executions may issue." I.C. § 1-1-4-5. Contextually, it is clear that the trial court merely evaluated Bowman's compliance with the requirements of T.R. 23 to reach its conclusion that class certification was warranted. In this light, the trial court's "judgment" should not be considered a decision on the merits of Bowman's action but rather an intermediate adjudication in this cause upon which further action can be taken.

## II. *Class Certification*

### A. *Standard of Review*

[12] "The principal purpose of the class action certification is 'promotion of efficiency and economy of litigation.'" *Gomez v. St. Vincent Health, Inc.*, 622 F.Supp.2d 710, 717 (S.D. Ind. 2008). The plaintiff has the burden of establishing that the class certification requirements of Trial Rule 23 have been

met. *Bolka*, 693 N.E.2d at 615. Failure to meet any one of the requirements results in the denial of class status. *Rene*, 726 N.E.2d at 816. Whether these prerequisites have been met is a factual determination to be made by the trial court. *Ind. Bus. Coll. v. Hollowell*, 818 N.E.2d 943, 949 (Ind. Ct. App. 2004).

[13] The trial court has broad discretion in determining whether an action is maintainable as a class action, and thus we review its class certification for an abuse of discretion. *Associated Med. Networks, Ltd. v. Lewis*, 824 N.E.2d 679, 682 (Ind. 2005). An abuse of discretion occurs when the trial court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law and fact. *Rene*, 726 N.E.2d at 817. The trial court's certification determination will be affirmed if supported by substantial evidence. *Id*. We neither reweigh the evidence nor judge the credibility of witnesses and affirm if the evidence most favorable to the judgment and all reasonable inferences drawn therefrom support the trial court's decisions. *Hollowell*, 818 N.E.2d at 949. Because Indiana Trial Rule 23 is based on Rule 23 of the Federal Rules of Civil Procedure, it is appropriate to consider federal court interpretations when applying the Indiana Rule. *Chicago Title Ins. Co. v. Gresh*, 888 N.E.2d 779, 782 (Ind. Ct. App. 2008).

## B. *Indiana Trial Rule 23*

[14] Indiana Trial Rule 23 governs class action certifications. A party requesting class certification must prove that the proposed class meets all of the requirements of Ind. T.R. 23(A) and at least one of the requirements of T.R.

23(B). *Wal-Mart Stores, Inc. v. Bailey*, 808 N.E.2d 1198, 1201 (Ind. Ct. App. 2004), *reh'g denied, trans. denied*. In addition to the express requirements for class certification, there is an implicit "definiteness" requirement. *Id*. A properly defined class is necessary at the onset because a judgment in a class action has a *res judicata* effect on absent class members. *Id*.

### 1. Class Definition

Reviewing the boundaries of the class, we note that "the class definition must be specific enough for the court to determine whether or not an individual is a member." *Id.* In her Complaint, Bowman defined the proposed class as:

> Individuals who attended a [L]uncheon on April 6, 2013, at the Downtown Marriott and who all suffered gastrointestinal illnesses and other injuries arising from the food they consumed at the [L]uncheon.

(Appellant's App. p. 19). In its Judgment granting the certification, the trial court omitted to include a specific definition. Despite this omission and unrequested by the parties, the trial court *sua sponte* appeared to enlarge the proposed group of class members in its conclusions. Specifically, focusing on both the Luncheon and the Gala, the trial court concluded that "all class members consumed the meal which was served at that Luncheon, Gala, or both." (Appellant's App. p. 15). As the trial court "can redefine a class in order to sustain the lawsuit," we will evaluate the trial court's enlarged class definition in light of the certification requirements of T.R. 23. *Id.* at 1202.

### 2. Indiana Trial Rule 23(A)

Indiana Trial Rule 23(A) provides that a plaintiff may sue as a representative on behalf of a class if the following four requirements are met:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

Marriott places all four requirements squarely at issue here.[1]

### i. *Numerosity*

With respect to the numerosity prerequisite of T.R. 23(A)(1), Marriott contends that applying a strict class certification as defined in the Complaint yields a class membership of a mere 24 members who became ill following participation at the Luncheon, rather than the 59 members resulting from the trial court's enlarged class membership. As a result, Marriott maintains that the trial court abused its discretion by concluding that numerosity was satisfied upon finding nothing more than conclusory allegations of impractable joinder and speculation about the potential class size.

---

[1] Marriott commences its analysis with a claim that several of the trial court's findings of fact are not supported by the evidence. However, each of these allegations refer to a specific requirement of TR 23(A) and therefore will be discussed within the appropriate subsection.

[19]     Whether the actual number of persons affected is 24 or 59, the numerosity

prerequisite is not simply a test of numbers. *McCart v. Chief Executive Officer in*

*Charge, Indep. Fed. Credit Union* , 652 N.E.2d 80, 83 (Ind. Ct. App. 1995), *reh'g*

*denied, trans. denied*. The real inquiry under the rule is whether joinder would be

impracticable. *See* T.R. 23(A)(1). In discussing the numerosity requirement,

we have previously stated that this analysis

> requires an examination of the specific facts and circumstances of each
> case. Proponents of the class are not required to specify the identities
> or exact number of persons included in the proposed class, but they
> may not rely on conclusory allegations that joinder is impracticable or
> upon speculation as to the size of the class. Instead, they must supply
> facts or demonstrate circumstances which provide support for a
> reasonable estimate of the number of class members. A finding of
> numerosity may be supported by common sense assumptions. Courts
> interpreting the identical provision of the federal rule have recognized
> that while numerosity analysis does not rest on a "magic" number,
> permissive joinder has been deemed impracticable where class
> members number forty or more. The numerosity inquiry requires the
> court to consider judicial economy and the ability of the class members
> to institute individual suits.

*Bolka*, 693 N.E.2d at 616 (internal citations omitted).

[20]     Here, the trial court found that:

> Bowman has, at this time, satisfied the requirements of T.R. 23(A)(1).
> At the class certification hearing Bowman presented evidence that she,
> along with fifty-eight (58) other self-reporting conference attendees, all
> experienced highly similar symptoms of illness upon eating at the
> hotel. This list is not inclusive; it only accounts for those [c]onference
> members who voluntarily reported their complaints to Marriott. []
> Allowing at least fifty-nine (59) individuals to pursue their claims
> against Marriott via separate lawsuits would not only be impracticable
> for the parties, but it would also be impracticable for this [c]ourt to

adjudicate all of these claims individually. As such, the class is too numerous for joinder of all of the class members to be practicable.

(Appellant's App. p. 13).

[21]     While Marriott repeatedly suggests that Bowman must establish the class boundaries before the class can be certified and cannot rely on the inclusion of possible potential class members, Bowman is "not required to specify the identities or exact number of persons included in the proposed class, and the fact that the number of class members cannot be determined with precision does not defeat certification." *7-Eleven, Inc. v. Bowens*, 857 N.E.2d 382, 392 (Ind. Ct. App. 2006). Although a party moving for class certification may not rely on conclusory allegations that joinder is impractical or upon speculation as to the size of the class, plaintiffs must supply facts or demonstrate circumstances that provide support for a reasonable estimate of the number of class members. *Id*.

[22]     We find that Bowman satisfied the numerosity prerequisite of T.R. 23(A). Bowman presented sufficient evidence to define the class boundaries as members attending and consuming a meal at the Luncheon and/or Gala and suffering gastrointestinal illnesses and other injuries thereafter. Besides the self-reporting attendees, Bowman also submitted proof as to the total number of possible attendees at either event. Paring down the list of attendees to fit within

the class' boundaries[2] and given the number projected by the trial court, it was within the trial court's discretion to determine that joinder of this reasonable estimate was impracticable.

### ii. *Commonality*

[23] The Marriott also takes issue with the trial court's determination that the commonality requirement of T.R. 23(A)(2) was met and asserts that "[i]n food liability cases such as this, similarity of symptoms is not always indicative of commonality." (Appellant's Br. p. 14).

[24] The commonality prerequisite focuses on the characteristics of the class. *Connerwood Healthcare, Inc. v. Estate of Herron*, 683 N.E.2d 1322, 1327 (Ind. Ct App. 1997). This requirement is satisfied if the individual plaintiff's claims are derived from a common nucleus of operative fact, which is described as a "common course of conduct." *Id*. *See also Hollowell*, 818 N.E.2d at 950.

[25] In concluding that commonality was satisfied, the trial court found:

> Bowman presented evidence that she and all members exhibited nearly identical symptoms, all of their symptoms are consistent with those typical of food contamination, including diarrhea; vomiting; gastrointestinal cramping; and chills, and the onset of symptoms for all class members occurred roughly within twelve hours after eating at the Luncheon. Thus, all of the class members present questions of law

---

[2] The names on the list also include individuals who did not dine at either the Luncheon or the Gala and consequently cannot participate in the class.

and fact which are common to the class as a whole to make class certification proper.

(Appellant's App. pp. 13-14).

[26] Focusing on the nature and severity of the members' symptoms, Marriott disputes their commonality because there is no evidence classifying the list of symptoms as typical of food contamination. Rather, Marriott argues that "[a]s the list of symptoms illustrates, some individuals experienced 'cold like symptoms,' 'congestion,' or general 'illness.'" (Appellant's Br. p. 14).

[27] The fact that members have a different degree of symptoms or damages does not negate the commonality component. To this effect, we found in *Connerwood* that "the negligent use and preparation of nonpasteurized egg products [which] caused the food poisoning" constituted a common course of conduct even though "70 persons developed one or more symptoms of food poisoning" while only some class members tested positive for salmonella. *Connerwood*, 683 N.E.2d at 1327, 1325. As such, individual questions do not prevent a class action on common questions. *Bank One, Indianapolis, N.A. v. Norton*, 557 N.E.2d 1038, 1042 (Ind. Ct. App. 1990). As one treatise explains, "even if only one common issue can be identified as appropriate for class action treatment, that is enough to justify the application of the provision as long as the other Rule 23 requirements have been met." 7B Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1790 (2d ed. 1986) (footnotes omitted).

[28] While we agree with Marriott that there is no evidence conclusively establishing that the "onset of the symptoms [] occurred roughly within twelve hours" of

consuming the allegedly contaminated meal, we find that sufficient facts exists which portray a common nucleus of operative facts. Specifically, the claim that contaminated meals were served during the Luncheon and Gala on April 6, 2013, at the Marriott which gave rise to the guests' complaints of one or more symptoms of food poisoning amounts to a "common course of conduct." *Connerwood*, 683 N.E.2d at 1327. Therefore, the trial court did not abuse its discretion in finding the commonality prerequisite satisfied.

### iii. *Typicality*[3]

[29] Next, Marriott contends that the typicality requirement is not established because "there are substantial differences among the putative class members in terms of what they ate, where they ate, and what they were exposed to, when they became ill, what their symptoms were, and how they were damaged." (Appellant's Br. p. 15). We disagree.

[30] The typicality requirement does not mandate Bowman to show that all claims are identical. *7-Eleven, Inc.*, 857 N.E.2d at 392. Instead, this requirement is satisfied if the representative plaintiff's claim is neither in conflict nor antagonistic to the class as a whole. *Id*.

[31] With respect to typicality, the trial court concluded that:

---

[3] Marriott's typicality argument includes an expose on the distinction between general liability and proximate cause. As we find this contention more appropriately related to the requirements of T.R. 23(B)(3), we shall not address Marriott's claim with respect to liability at this time.

Bowman has, at this time, satisfied the requirements of T.R. 23(A)(3). [] All members of the class not only have the same claims, but Bowman's claims as class representative are also "neither in conflict with nor antagonistic to the class as a whole." It is not uncommon for individuals that have been afflicted with the same illness to not show perfectly identical symptoms and of the same severity. As these factual distinctions in the class do not defeat satisfaction of the requirements of T.R. 23(A)(3), Bowman has satisfied this requirement.

(Appellant's App. p. 14) (internal citations omitted).

As noted by the trial court, all plaintiffs complained that their injuries were instigated by the contaminated food served by Marriott during the Luncheon and/or Gala on April 6, 2013. As Bowman presents a claim which does not differ dramatically from the other plaintiffs' claims, her contentions are neither in conflict nor antagonistic to the class as a whole. We affirm the trial court with respect to typicality.

### iv. *Adequacy*

Marriott represents that the instant action was improperly certified as a class action because Bowman cannot fairly and adequately represent the class. Indiana's Trial Rule 23(A)(4) adequacy requirement has three components: 1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; 2) the named representative must have a sufficient interest in the outcome to ensure vigorous adequacy; and 3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Bolka*, 693 N.E.2d at 618.

In this respect, the trial court held that:

> In satisfying prong one of T.R. 23(A)(4), and as previously discussed, Bowman, as the chosen class representative, does not have antagonistic or conflicting claims with the other members of the class. Secondly, Bowman, as class representative, has more than sufficient interest in the outcome of the cause of action in order to ensure vigorous advocacy. Bowman was not only stricken with the terrible symptoms that all class members experienced, she also spent several days in the hospital as a result. Bowman's experiences as a result of her illness caused her to have not only sufficient but also a significant interest in the outcome to ensure vigorous advocacy. Lastly, lead counsel for Bowman has forty-eight (48) years of legal experience primarily focused in litigation, and has previously handled a food poisoning case. Likewise, counsel and counsel's firm have handled class actions previously such that both are qualified and experienced to adequately and professionally conduct the litigation on behalf of Bowman and [] all of the class members.

(Appellant's App. pp. 14-15).

[35] Focusing on the adequacy of Bowman's representation, Marriott contends that Bowman neither possesses the same interest nor suffered the same injury as the class and therefore class certification should be defeated. Specifically, Marriott argues that Bowman has no evidence linking her illness to any particular food she consumed at the hotel, nor were her physicians able to make a determinative diagnosis as to whether her illness was caused by food poisoning. Rather, Marriott claims that the record established that Bowman, unlike any other class member, "developed an irregular heartbeat as a result of the occurrence." (Appellant's Br. p. 19).

[36] At the moment, Bowman is a suitable representative of the class. Bowman has the same interest and suffered similar injures as the other class members. She attended and consumed food at both the Luncheon and Gala. She became

violently ill thereafter, experiencing bouts of severe diarrhea and vomiting for which she was ultimately hospitalized. It should be remembered that a class action certification is not a decision on the merits. *See, e.g., id.* Thus, the availability of potential individualized defenses to Marriott against Bowman's claim is not a bar to class certification. Indiana Trial Rule 23(D)(2) contemplates that a representative might have to be replaced, since it provides for the appointment by the trial court of new representatives should such appointment become necessary. *See, e.g., Bolka*, 693 N.E.2d at 618 (we rejected NIPSCO's argument that plaintiff's claim was statutorily barred and therefore plaintiff was an inadequate representative of the class.) Once the issue of liability is determined, Marriott has the right to present its defense which may or may not be applicable to all members, including Bowman. Even if Marriott's defense proves to be a bar to recovery for Bowman personally, it is within a trial court's power to—at that point—decertify the action for damages or appoint a new representative. However, until adjudication is made on the common issue and Marriott presents a defense to Bowman's claim, Bowman is an adequate representative.

### 3. Indiana Trial Rule 23(B)

[37]    Of the three listed, additional prerequisites, any one of which is sufficient to support class certification, the trial court concluded that T.R. 23(B)(3) was satisfied. Indiana Trial Rule 23(B)(3) requires the trial court to "find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for the fair and efficient adjudication of the controversy." The matters pertinent to this finding include:

> (a) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (c) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (d) The difficulties likely to be encountered in the management of a class action.

T.R. 23(B)(3).

[38] Marriott disputes that Bowman has met the requirements of Indiana Trial Rule 23(B)(3), which mandates not only the existence of questions of law or fact common to the members of the class but also requires these questions to predominate over any questions affecting only individual members. *See Associated Med. Networks, Ltd.*, 824 N.E.2d at 684. There is no precise test for determining whether common questions of fact or law predominate; instead, Indiana Trial Rule 23(B)(3) requires a pragmatic assessment of the entire action and all the issues involved. *Id.* at 686.

### i. *Predominance - Legal Standard of Analysis*

[39] Initially, prior to turning to the merits of its T.R. 23(B)(3) argument, Marriott contends that the trial court analyzed predominance under an incorrect legal standard. To posit its claim of error, Marriott relies on the trial court's

statement that "[t]he requirements of T.R. 23(B)(3) mirror those of T.R. 23(A)(2) and are 'satisfied if the claims of the individual plaintiffs are derived from a common nucleus of operative facts.'" (Appellant's App. p. 15) (internal citation omitted). Because the analytic evaluation for each statutory subsection of T.R 23(B) is distinct from those of T.R. 23(A), Marriott maintains that a reversal of the trial court's decision is warranted.

[40] We have stated before that while there is a certain overlap between T.R. 23(A)(2) and T.R. 23(B)(3), the "requirement of commonality is [] augmented by the predominance requirement of T.R. 23(B)(3), which requires not only the existence of 'questions of law or fact common to the members of the class,' but also that these questions must 'predominate over any questions affecting only individual members.'" *Associated Med. Networks, Ltd.*, 824 N.E.2d at 684. As such, we have held that "there must be more than a mere nucleus of facts in common with the plaintiff class." *Id*. at 685. Thus, predominance requires more than commonality. *Id*.

[41] The trial court concluded that because "Bowman and the class members' claims all derive from a common nucleus," the predominance requirement was satisfied. (Appellant's App. p. 15). Although "the claims may arise from 'a common nucleus of operative facts,' [this] does not mean that the common claims necessarily predominate." *Associated Med. Networks, Ltd.*, 824 N.E.2d at 685 (*citing Wal-Mart Stores Inc.*, 808 N.E.2d at 1204). We find this to be the case here.

ii. *Predominance – Characteristics*

As noted before, there is no precise test for determining whether common questions of law or fact predominate; instead, Indiana Trial Rule 23(B)(3) requires a pragmatic assessment of the entire action and all the issues involved. *7-Eleven, Inc.*, 857 N.E.2d at 393.

> In making this decision, we consider whether the substantive elements of class members' claims require the same proof for each class member; whether the proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests; whether the resolution of an issue common to the class would significantly advance the litigation; whether one or more common issues constitute significant parts of each class member's individuals cases; whether the common questions are central to all of the members' claims; and whether the same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.

*Associated Med. Networks, Ltd.*, 824 N.E.2d at 686.

Marriott contends that the case is dominated by the individual issues of causation and damages. It specifies that "even if a jury found that food served at the Marriott was contaminated or defective, each claimant would still need to prove that his or her injuries were proximately caused by consumption of Marriott food, including a diagnosis linking their alleged illness with food service associated with the Marriott." (Appellant's Br. pp. 21-22). As such, Marriott maintains that "[t]his individualized process would predominate over any issues common to the class such that class treatment would be ineffective and inappropriate." (Appellant's Br. p. 22).

[44] Causation is typically discussed in terms of generic and specific causation. *7-Eleven, Inc.*, 857 N.E.2d at 389. General or generic causation has been defined by courts to mean whether the substance at issue had the capacity to cause the harm alleged, while individual causation refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance. *Id.* To prevail on a claim, the class will have to establish both generic and individual causation. *Id.* Similarly, here, this means that Bowman must establish not only that the food was contaminated by Mariott and was capable of causing the symptoms and injuries complained of, but in addition, that the contaminated food was the cause-in-fact of each class member's specific ailments.

[45] To account for the distinction in proof between generic and proximate causation, this court affirmed the trial court's limited class certification as to the issues of liability and causation in *7-Eleven, Inc. See 7-Eleven, Inc.*, 857 N.E.2d at 389. Requesting a class action certification after a neighborhood's groundwater was contaminated by a release of gasoline and plaintiffs incurred health risks associated with exposure to the chemicals, plaintiffs advocated for a class definition limited to "the issue of general liability in which an expert would testify that exposure to the contamination would 'cause certain health symptoms in a general way.'" *Id.* at 388 (internal reference omitted). The plaintiffs proposed that after general causation was determined, "there would be a series of individual trials for the class members whose injuries fell within those established as a matter of general causation." *Id.* Concluding that this limited

class certification would reduce repetitious litigation as "those class members who cannot establish the issues of general liability would not be entitled to recover, effectively limiting the scope of the class," we affirmed the trial court's decision. *Id*. at 399.

[46] However, prior to our decision in *7-Eleven, Inc.*, this court stated:

> In the typical mass tort situation, such as an airplane crash or a cruise ship *food poisoning*, proximate cause can be determined on a class-wide basis because the cause of the common disaster is the same for each of the plaintiffs.

*Connerwood*, 683 N.E.2d at 1327 (quoting *In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig. v. A.H. Robbins Co.*, 693 F.2d 847, 853 (9th Cir. 1982), *cert. denied*, 459 U.S. 1171 (1983)) (emphasis in original). In *Connerwood*, the estate of a deceased nursing home resident sought certification for a class action arising out of the food poisoning of approximately seventy residents and employees after developing one or more symptoms of food poisoning. *Id*. at 1325. We affirmed the trial court's certification because "[t]he potential class members are elderly and medically compromised and may be incapable of exercising their own rights. This action originates from common operative facts and both state and federal courts have determined that class action treatment is appropriate for a mass tort such as food poisoning."[4] *Id*. at 1329.

---

[4] We decided *Connerwood* several years prior to our opinion in *7-Eleven, Inc.* which elaborately explained the predominance requirements of T.R. 23(B)(3). Without having had the benefit of this detailed analysis, *Connerwood* appears to equate the requirements of the common facts in T.R. 23(A)(2) with the predominance requirements of T.R. 23(B)(3).

[47] The class action certification of an airplane crash or a cruise line food poisoning case, and even *Connerwood*, must be distinguished from the instant cause at Marriot. While in the former, proximate cause exists in a controlled and limited environment and can be determined on a class-wide basis because the cause and consequences of the common disaster are identical for all the members, causation in the case at bar is more wide-ranging. Not only is there no consistency among the individual member's dining options and locations—some members attended the Luncheon or the Gala, and some attended both—there are differences in the food consumed—as Bowman has not yet conclusively established the exact cause of the alleged food contamination—and there is a distinction in injuries—some members complained of vomiting while others incurred "illness" or "congestion." (Appellant's Conf. App. pp. 203-04).

[48] By applying the procedural device of a class action certification, the court can initially assess Marriott's potential liability for its conduct without regard to the individual components of each class member's injuries, *i.e.*, whether contaminated food was served during the Luncheon and/or Gala. However, after Marriott's general liability is established, it becomes the responsibility of each individual member to show that the member ingested the contaminated food and that his or her specific injuries or damages were proximately caused thereby. We cannot emphasize this point strongly enough because generalized proof will not suffice to prove individual damages. The main problem this appellate court has on review stems from a failure to differentiate between the

general and the particular. Although many common issues of fact and law will be capable of resolution on a group basis, customized and particularized damages must be established at an individual level.

[49] Thus, the practical reality of a class certification in this case reveals that while it will be relatively easy to establish Marriott's generic liability, the case will become inevitably dominated by the individual issues of extent and nature of the injuries, and the degree of exposure. As such, there would be inextricable entanglement with the individualized issues of proximate cause that will no doubt subsume any common questions that may be present. Accordingly, we cannot conclude that the class, as certified by the trial court, would contribute to the economies of time, effort, and expense that a class certification is intended to achieve. *See Gomez*, 622 F. Supp. 2d at 717. Finding that the questions of law and fact common to the members of the class do not predominate over the issues affecting the individual members, we reverse the trial court's certification. *See* T.R. 23(B)(3).

### iii. *Option on Remand*

[50] Even though we have determined that the class as defined is not properly maintainable, the class may be redefined in order to sustain the lawsuit. *See* T.R. 23(C)(1). Indiana Trial Rule 23(C)(4)(a) provides that when appropriate, "an action may be brought or maintained as a class action with respect to particular issues[.]" As we have recognized:

> The theory of Rule 23(C)(4)(A) is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member. Accordingly, even if only one common issue can be identified as appropriate for class action treatment that is enough to justify the application of the provision as long as the other Rule 23 requirements have been met. As a result, cases have applied subdivision (C)(4)(A) to allow a partial class action to go forward and have left questions of reliance, damages, and other issues to be adjudicated on an individual basis.

*Bank One Indianapolis, N.A. v. Norton*, 557 N.E.2d 1038, 1041 (Ind. Ct. App. 1990) (quoting 7B C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*: Civil 2d § 1790, 271-74 (1986) (footnotes omitted)).

[51] In light of the possibility that Bowman wishes to proceed with certification under T.R. 23(B)(3), we recommend the trial court to follow the lead of the *7-Eleven, Inc.* court and certify the class with respect to Marriott's general liability only, with proximate cause of the members to be determined in a series of individual hearings. As to generic causation, we believe the substantive elements of the claims require the same proof for each class member, the class is bound together by a mutual interest in resolving this common question more than it is divided by individual interests, that the resolution of this common issue will significantly advance the litigation, and that a common question central to all of the members' claims exists. *See Associated Med. Networks, Ltd.*, 824 N.E.2d at 685. As our supreme court has explained:

> The predominance test really involved an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that

can be achieved by allowing a multiple party dispute to be resolved on a class action basis.

*Id*. at 685. We believe that by certifying only the general causation issue, this balance between the individual's values and the judicial economy of jointly adjudicating common issues will be achieved. We remand to the trial court.

## CONCLUSION

[52] Based on the foregoing, we conclude that the trial court entered a judgment in favor of Bowman solely with respect to her class certification request and did not enter a judgment on the merits. Furthermore, because we conclude that Bowman did not satisfy the predominance requirement of T.R. 23(B)(3), we reverse the trial court's certification of the class and remand the cause for further proceedings consistent with this opinion.

[53] Reversed and remanded.

[54] Bailey, J. and Barnes, J. concur