


FILED
Oct 07 2024, 8:38 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

### Union Savings Bank,

*Appellant / Plaintiff / Counterclaim-Defendant*

v.

### Mychael T. Spencer,

*Appellee / Defendant / Counterclaim-Plaintiff*

---

October 7, 2024

Court of Appeals Case No.
23A-PL-2734

Interlocutory Appeal from the Hancock Circuit Court

The Honorable R. Scott Sirk, Judge

Trial Court Cause No.
30C01-2204-PL-493

---

**Opinion by Judge Bradford**
Judges Crone and Tavitas concur.

**Bradford, Judge.**

# Case Summary[1]

[1]    In July of 2021, Union Savings Bank ("USB") sent a loan-payoff statement to Mychael Spencer, which Spencer paid, leading USB to release its note and mortgage associated with Spencer's property. The payoff statement that USB had sent to Spencer erroneously had not included $5872.50 in payments that had previously been deferred due to the Covid-19 pandemic. USB filed a small-claims action seeking to recover the funds. Spencer filed a counterclaim in which he alleged that USB had engaged in deceptive practices and requested that the case be certified as a class action. In seeking class certification, Spencer alleged that he was bringing the action on behalf of himself and 12,585 other persons who had received a loan payoff statement from USB in the relevant two-year period. The trial court granted Spencer's request for class certification. The trial court subsequently denied USB's motion to reconsider and certified the case for interlocutory appeal.

[2]    USB argues on appeal that the trial court abused its discretion in denying its motion to reconsider because the class members lacked standing to sue. Spencer, on behalf of the class, argues that the trial court properly determined that they did have standing to sue. Both parties rely on the Indiana Supreme

---

[1] We held oral argument in this case on September 25, 2024, in our courtroom in the Indiana State House. We commend counsel for the high quality of their arguments to the court.

Court's decision in *Hoosier Contractors, LLC v. Gardner*, 212 N.E.3d 1234 (Ind. 2023) in support of their respective positions. Because we agree with USB that the class members lack standing, we reverse and remand with instructions for the trial court to decertify the class.

# Facts and Procedural History

[3] In June of 2018, Mychael Spencer borrowed $231,800.00 from Union Savings Bank ("USB"), secured by a mortgage on his home in McCordsville. In November 2020, for pandemic-related reasons, USB deferred four of Spencer's monthly payments, totaling $5872.50.

[4] USB provided Spencer with a payoff statement in July of 2021. In the payoff statement, USB expressly "reserve[d] the right to correct any portion of this statement at any time." Appellant's App. Vol. II p. 88. Due to an inadvertent error, the payoff statement had omitted the $5872.50 in deferred payments. After Spencer had paid the amount listed in the payoff statement and USB had released its note and mortgage on Spencer's property, USB discovered the alleged error. On January 25, 2022 and March 7, 2022, USB sent requests for repayment of the $5872.50 to Spencer. As of May 2, 2022, Spencer had not responded to USB's requests.

[5] On May 2, 2022, USB filed an action in the small-claims court to recover the $5872.50 allegedly owed by Spencer. The case was removed from the small-

claims court and assigned to the trial court after Spencer requested a jury trial.
Spencer filed a counterclaim against USB, in which he alleged that USB had

> violated the Deceptive Consumer Sales Act [("DCSA")],
> particularly [Indiana Code section] 24-5-0.5-3(a), by using a
> deceptive form called a "Loan Payoff Statement" that purported
> to state a loan payoff but, because of print buried in the middle of
> a paragraph which stated "Union Savings Bank reserves the right
> to correct any portion of this statement at any time," made the
> disclosure illusory and deceptive; the form invites reliance but it
> is deceptive because consumers do not know it is not worthy of
> reliance because Union Savings Bank reserves the right to change
> it *in any way at any time*.
>
> 31.  Union Savings Bank engaged in a scheme to mislead Mr.
> Spencer by the foregoing actions to get him to refinance his
> mortgage loan and profit therefrom; in addition, as to the Loan
> Payoff Statement part of the scheme was to use the same
> deceptive form with many others.

Appellant's App. Vol. II p. 75 (brackets added, emphasis in original).  Spencer
also sought class-action certification for his counterclaim.  In seeking class
certification, Spencer alleged that he was bringing the "action on behalf of
himself and all persons similarly situated in the State of Indiana for whom
[USB had] sent a loan payoff statement (in a form substantially similar to the
Loan Payoff Statement sent to [Spencer]) within the period of two years before
the date of the filing of" his complaint.  Appellant's App. Vol. II p. 77.

[6]     In contesting class certification, USB asserted that, out of the 12,586 payoff
statements sent during the relevant period, 12,580 were correct and only six
were determined to have contained errors.  Of the six persons who had received

amended payoff statements from USB, five "either paid or negotiated the payment of the amounts that they still owed on their loans and paid them off." Tr. Vol. II p. 7. The only individual who had contested the corrected amount was Spencer.

On May 1, 2023, the trial court issued an order certifying the class. USB filed a motion to reconsider on July 31, 2023. On October 16, 2023, the trial court denied USB's motion to reconsider and certified the case for interlocutory appeal, and we accepted jurisdiction.

## Discussion and Decision

"Class certification is essentially a procedural order and carries no implication about the merits of the case." *LHO Indpls. One Lessee, LLC v. Bowman*, 40 N.E.3d 1264, 1268 (Ind. Ct. App. 2015) (quotation omitted).

> Thus, in making a determination regarding class certification, a trial court may not conduct a preliminary inquiry into the merits of the suit. As a certification hearing is not intended to be a trial on the merits, Trial Rule 23 does not require a potential class representative to show a likelihood of success on the merits in order to have his claim certified as a class action. Instead, assuming the merits of an action, a trial court must determine whether the plaintiff has satisfied the requirements for class certification under Trial Rule 23.

*Id*. (citation and quotations omitted).

"The principal purpose of the class[-]action certification is promotion of efficiency and economy of litigation." *Id.* at 1269 (quotation omitted).

> The plaintiff has the burden of establishing that the class certification requirements of Trial Rule 23 have been met. Failure to meet any one of the requirements results in the denial of class status. Whether these prerequisites have been met is a factual determination to be made by the trial court.

*Id.* (citations omitted).

Trial Rule 23 provides as follows:

> **(A) Prerequisites to a Class Action**. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
> > (1) the class is so numerous that joinder of all members is impracticable;
> > (2) there are questions of law or fact common to the class;
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> > (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(B) Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
> > (1) the prosecution of separate actions by or against individual members of the class would create a risk of:
> > > (a) inconsistent or varying adjudications with respect to individual members of the class which would establish

incompatible standards of conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

[11]   USB contends that the trial court abused its discretion in denying its motion to reconsider its prior order certifying the class. We review a denial of a motion to reconsider for an abuse of discretion. *See Hess v. Bd. of Dirs. of Cordry-Sweetwater Conservancy Dist.*, 141 N.E.3d 889, 892 (Ind. Ct. App. 2020). Furthermore,

> [t]he trial court has broad discretion in determining whether an action is maintainable as a class action, and thus we review its class certification for an abuse of discretion. An abuse of discretion occurs when the trial court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law and fact. The trial court's certification determination will be affirmed if supported by substantial evidence. We neither reweigh the evidence nor judge the credibility of witnesses and affirm if the evidence most favorable to the judgment and all reasonable inferences drawn therefrom support the trial court's decisions. Because Indiana Trial Rule 23 is based on Rule 23 of the Federal Rules of Civil Procedure, it is appropriate to consider federal court interpretations when applying the Indiana Rule.

*Bowman*, 40 N.E.3d at 1269 (citations omitted).

[12]   In arguing that the trial court abused its discretion in denying its motion to reconsider the class certification, USB asserts that the trial court erred in determining that the class members had standing to sue.

> The threshold issue of standing determines whether a litigant is entitled to have a court decide the substantive issues of a dispute. The standing requirement mandates that courts act in real cases, and eschew action when called upon to engage only in abstract speculation. Whether a party has standing is a legal question we review de novo.

*Hoosier Contractors*, 212 N.E.3d at 1238 (citation and quotations omitted).

[13] "Standing is a significant restraint on the ability of Indiana courts to act, as it denies the courts any jurisdiction absent an actual injured party participating in the case." *Id.* (quotation omitted). "Indiana law is clear that standing requires an injury, which is met if the party shows it has suffered or is in immediate danger of suffering a direct injury as a result of the complained-of conduct." *Id.* (brackets removed, citation and quotation omitted). "Because standing under the Indiana Constitution is jurisdictional, it must exist at all stages of litigation." *Id.* Thus, "[p]arties asserting a counterclaim must likewise comport with these standing requirements." *Id.*

[14] In his counterclaim, Spencer alleged that USB had violated the DCSA, which provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the **damages actually suffered** as a consumer as a result of a deceptive act[.]" Ind. Code § 24-5-0.5-4(a) (emphasis added). With regard to class actions, Indiana Code section 24-5-0.5-4(b) provides:

> Any person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member and which has been damaged by such deceptive act, subject to and under the Indiana Rules of Trial Procedure governing class actions, except as herein expressly provided.

The Indiana Supreme Court has interpreted Indiana Code section 24-5-0.5-4(a) to require both reliance on the deception and actual damages. *Hoosier*

*Contractors*, 212 N.E.3d at 1239. Thus, in order to have suffered an injury sufficient to grant standing to sue, the claimant must have suffered actual damages.

[15]    In his counterclaim and request for class certification, Spencer alleged that he was injured by USB's request that he pay additional funds after his loan had been allegedly paid off at the time he refinanced. While Spencer may have alleged a sufficient injury to confer standing on him, he included no similar concrete alleged injury with regard to the proposed class members.[2] In seeking class certification, Spencer merely alleged that each individual who had received a loan-payoff statement from USB had been injured because they had detrimentally relied on the loan-payoff statement as providing an accurate accounting of the amount owed on their respective loans. Spencer did not include any additional detail as to the nature of the injury allegedly suffered by the proposed class members. Essentially, Spencer argued both below and on appeal that each class member had standing because each "was deceived and was the victim of an unfair and deceptive practice regardless of whether they were later told they owed more money." Appellee's Br. p. 13.

[16]    For its part, USB argues that none of the class members have standing to sue because none of the class members suffered an injury-in-fact. In *Hoosier Contractors*, the Indiana Supreme Court stated that the DCSA "confirms that the

---

[2] We note that our decision regarding the class certification has no bearing on Spencer's counterclaim against USB, as it pertains to him, which remains active regardless of whether the class certification remains.

consumer must suffer an actual injury due to his reliance on a deceptive act" and, in class actions, "requires that every class member must suffer damages derived from actual injuries." 212 N.E.3d at 1240. USB therefore argues that

> [a] deceptive act, without actual damages, is not enough to establish an injury-in-fact, according to *Hoosier Contractors*. Because the class members have no actual damages, they lack standing. With a class the size of zero, one, or at most six, numerosity and typicality are lacking, and the class must be decertified.

Appellant's Br. pp. 11–12.

[17] The Indiana Supreme Court has held that a possible future injury is not sufficient, without more, to demonstrate an actionable injury for standing purposes. *Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 219–20 (Ind. 2022) (providing that a possible effect of potential projects does not constitute a demonstrable injury). With regard to the DCSA, the Indiana Supreme Court has held that "the [DCSA] requires consumers to rely on the deceptive act *and* suffer injury as a result—known as detrimental reliance: Reliance by one party on the acts or representations of another, causing a worsening of the first party's position." *Hoosier Contractors*, 212 N.E.3d at 1240 (quotation omitted, emphasis added). The Indiana Supreme Court rejected the assertion that a deceptive act, without more, is a detriment sufficient to confer standing, noting that "[a] deceptive act that deceives no one injures no one." *Id.* at 242.

[18] The trial court's class certification included not just the six persons who ultimately received a corrected payoff statement, but all 12,586 persons who received a loan-payoff statement similar to that received by Spencer. Again, USB asserts that, out of the 12,586 payoff statements sent during the relevant period, 12,580 were correct and only six were determined to have contained errors. Thus, USB asserts that the vast majority, 99.95%, of persons who received payoff statements from USB were unaffected by USB's allegedly deceptive statement as they suffered only a potential future harm. Specifically, with regard to the 12,580, USB argues that "[t]hese class members will never receive a second loan payoff statement that somehow harms them. Their original loan payoff statements were all correct, their debts were extinguished, and their accounts closed." Appellant's Br. p. 17. Thus, even if USB were assumed to have made a deceptive statement in the payoff statements, these borrowers have not "suffered even the slightest harm." Appellant's Br. p. 17. As far as these class members are concerned, there is no allegation that they were told to pay the wrong amount or relied to their detriment on an inaccurate figure. Thus, USB asserts that they "lack an injury, and therefore lack standing." Appellant's Br. p. 17.

[19] On behalf of the class, Spencer argues that the "real wrongdoing … is the deception an unfairness involved in giving an illusory payoff figure." Appellee's Br. p. 12. He further argues that "[t]he injury to each class member occurred when they were tricked into relying on an illusory loan payoff figure,

which placed them in a less favorable position … than they would have been had they not been deceived." Appellee's Br. p. 12. Spencer asserts that

> Each class member here relied on [USB's] deceptive conduct. We know this because each class member paid off their loan based upon the Loan Payoff Statement.… The fact that a class member paid off their loan is indisputable proof of reliance since the Loan Payoff Statement is the only way the consumer could know how much to pay. And each class member was worse off as a result. Each class member thought that [USB] had committed to a payoff amount and would be bound by that figure. But due to [USB's] deception … that was not the case. Reliance on the deceptive Loan Payoff Statement left them worse off because [USB] had *not* committed to the payoff amount.

Appellee's Br. p. 15 (emphasis in original). Thus, Spencer claims that each class member has standing because they relied on the payoff statements to their detriment as they were "left in a worse position than they would have been had the Loan Payoff Statement not been deceptive." Appellee's Br. p. 16. Spencer asserts that all that is required is "some worsening" of the class members' positions, not a significant worsening. Appellee's Br. p. 17.

[20] USB responds that an individual cannot be deceived by the truth and that "an estimate that proves to be accurate deceives nobody." Appellant's Reply Br. p. 6. USB states that

> 99.95% of the class could not have been harmed by a completely accurate statement of their loan balance. There is nothing illusory, deceptive, incomplete, or noncommittal about a document that states plainly the correct amount owed. So there

> can be no detriment for a class member that relied on such a statement.

Appellant's Reply Br. pp. 6–7. USB further states that "[t]here is nothing illusory about USB's reserving the right to correct an incorrect document." Appellant's Reply Br. p. 7.

[21] While USB agrees that the detriment or harm to confer standing can be minimal, it argues that a potential or "conjectural" harm is not sufficient. Appellant's Reply Br. p. 9. Thus, while "a worsening of position need not be terribly significant to constitute an injury, … [it] still needs to be an actual, *current* worsening of a position, not some conjectural one that has nearly zero chance of ever occurring." Appellant's Reply Br. p. 10 (emphasis in original). USB argues that the challenged portion of the payoff statements merely "reserve[d] the right to *correct* any portion of this statement at any time." Appellant's App. Vol. II p. 88 (emphasis added). As such, USB argues that the provision "does not give USB free reign to invent new obligations or collect money that it is not owed." Appellant's Br. p. 21. USB asserts that "[t]he problem[] with [Spencer's] argument is that it hinges on the fiction that USB might invent and then try to collect a debt that is not owed—and *not* on something that is actually happening or likely to happen." Appellant's Reply Br. p. 9 (emphasis in original). In sum, USB argues that in order to confer standing, "[t]here cannot be an injury from an abstract, conjectural, and hypothetical act that USB has never taken and has no apparent reason to ever take with 99.95% of the class members." Appellant's Reply Br. p. 10.

[22] Upon review, we agree with USB on this point. While the level of injury required to confer standing was minimal at this point in the litigation, we do not believe that Spencer's counterclaim or request for class certification demonstrates *any* actual injury to the proposed class members. The alleged injury is, at best, an abstract and speculative possible future injury. Again, as the Indiana Supreme Court has held, such a possible future injury is not sufficient, without more, to demonstrate an actionable injury for standing purposes. *Solarize*, 182 N.E.3d at 219–20. As such, we conclude that the trial court abused its discretion in denying USB's motion to reconsider the class certification.

[23] Furthermore, with respect to the six persons who received a corrected loan-payoff statement, even if we were to assume that those persons have suffered some kind of injury, class certification is not necessary, as Indiana Trial Rule 42(A) provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated." Again, one of the requirements for class certification set forth in Trial Rule 23(A) is that "the class is so numerous that joinder of all members is impractical." We cannot say that six persons creates a class that is "so numerous" that joinder is impractical.

[24] We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Crone, J., and Tavitas, J., concur.


ATTORNEYS FOR APPELLANT

Jackie M. Bennett, Jr.
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

Russell S. Sayre
Annie M. McClellan
Taft Stettinius & Hollister LLP
Cincinnati, Ohio


ATTORNEY FOR APPELLEE

Robert E. Duff
Indiana Consumer Law Group
Fishers, Indiana